## THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. WILLIAM MASSELLI, DEFENDANT-MOVANT.

Argued May 5, 1964—Decided July 7, 1964.

(1)

*Mr. Marvin H. Gladstone* argued the cause for appellant.

*Mr. Ronald J. Picinich,* Assistant Prosecutor, argued the cause for respondent (*Mr. Guy W. Calissi,* Bergen County Prosecutor, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J. This case involves the Interstate Agreement on Detainers adopted by both New Jersey (*N. J. S.* 2A:159A-1 *et seq.*) and New York (*N. Y. Code of Criminal Procedure,* § 669-b). Pursuant to the agreement, defendant, while serving a prison term in New York, was brought to New Jersey to answer charges in Union County and in Bergen County. In Union County he contended successfully that the prosecution had failed to meet certain time limitations, to which we shall later refer, and hence the indictment in that county had to be dismissed. The court's opinion, reported under the name of a codefendant, is *State v. Chirra,* 79 *N. J. Super.* 270 (*Law Div.* 1963). No appeal was taken from that judgment. Defendant then sought dismissal of the Bergen County indictment on like grounds. His applications there, both by motion and by *habeas corpus,* were denied. We certified his appeals before argument in the Appellate Division.

The New York enactment of the Interstate Agreement on Detainers became effective on September 1, 1957 and the New Jersey counterpart on April 18, 1958. The purpose of the agreement appears in *N. J. S.* 2A:159A-1:

"The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints."

The statute permits the transfer of temporary custody of a prisoner by the State of imprisonment, called the "sending" State, to the State which lodged a detainer, called the "receiving" State. The transfer may be made either on the prisoner's initiative or on the initiative of the receiving State. Article III, which appears in *N. J. S.* 2A:159A–3 and deals with a prisoner's request, provides that "he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction" his written request for a final disposition of the indictment, information or complaint. The prisoner's request constitutes a waiver of extradition as to all charges in the receiving State for which detainers have been lodged.

Article IV (*N. J. S.* 2A:159A–4) deals with an application for temporary custody made by a prosecuting official of the receiving State. It provides for a delay of 30 days after receipt of the request during which period the Governor of the sending State may disapprove the transfer on his own or upon the prisoner's motion. Subsection (c) reads:

"In respect of any proceeding made possible by this Article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

Article V (*N. J. S.* 2A:159A–5) provides that in response to a request by the prisoner or the receiving State, the sending State shall "offer" to deliver temporary custody to the

receiving State and the representative of the receiving State "accepting an offer" shall present evidence of his authority and copies of the indictments. Subsection (c) contains one of the provisions critical in this case:

"If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."

Article VI (*N. J. S.* 2A:159A–6) provides that the running of the 180 days under Article III and the 120 days under Article IV "shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." It also provides that the agreement shall not apply to a person "who is adjudged to be mentally ill."

The statute authorizes the promulgation of rules and regulations, *N. J. S.* 2A:159A–7 and 14. We will later refer to sundry forms so adopted.

With this statutory outline in mind, we can approach the facts.

On August 31, 1957 defendant was arrested in New York State. On March 24, 1958 he was convicted in Orange County, New York, and sentenced to a term of 10 to 15 years. He remained in New York's custody without interrruption until January 23, 1963 when temporary custody was given to the prosecutor of Union County, New Jersey.

On October 2, 1957 a warrant for defendant's arrest for armed robbery was issued in Bergen County, New Jersey, and a detainer duly lodged in New York. The indictment later returned on that charge is the indictment here involved.

On April 7, 1958 indictments were returned in Union County, New Jersey, and detainers thereon were lodged with New York.

Presumably defendant was notified of these detainers pursuant to the New York counterpart of *N. J. S.* 2A:159A–3(c), which provides that the warden shall promptly inform a prisoner of all detainers "and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based." In any event, the record before us reveals that by letter dated January 20, 1959 the prosecutor of Bergen County asked the warden of Sing Sing Prison to inquire of defendant whether he "would be willing to return" to New Jersey under the Interstate Agreement on Detainers to stand trial on the indictment. On February 3, 1959 the warden replied that defendant "was interviewed and stated that he does not wish to make final disposition of the open indictment on file against him for armed robbery until he has consulted a lawyer." Thus defendant was fully aware of the indictment and also of his opportunity for an early trial in Bergen County which he declined. Indeed, the record makes it perfectly plain that defendant was determined to avoid a trial on the merits.

On January 14, 1960 the prosecutor of Union County requested temporary custody under Article IV of the Interstate Agreement. On February 10, 1960 the warden of the New York prison advised the prosecutor that he was prepared to make delivery 30 days later (March 10, 1960) upon presentation of evidence of authority and the indictment as provided in *N. J. S.* 2A:159A–5.

Defendant without success urged the Governor of New York to disapprove of the transfer under Article IV (*N. J. S.* 2A:159A–4(a)). At the same time he quite obviously sought to complicate matters by demanding an immediate trial in Bronx County, New York, on another charge there pending. Defendant had been convicted of that other charge on December 4, 1958 and had obtained a reversal on March 1, 1960. *People v. Masselli,* 10 *A. D.* 2d 45, 196 *N. Y. S.* 2d 908 (*1st Dep't* 1962). On March 2, 1960, which was eight days short of the anticipated date of delivery to New Jersey, defendant demanded retrial in Bronx County under § 669-a of

the New York Code of Criminal Procedure which applies intrastate and requires trial within 180 days after a prisoner's request. An administrative clerk in New York took the position that his demand could not be honored because of the impending transfer to New Jersey. Subsequently defendant prevailed in New York on his claim that the Bronx indictment had to be dismissed because he was not brought to trial in response to his demand within the period provided in the New York Code. *People v. Masselli,* 17 *A. D.* 2d 367, 234 *N. Y. S.* 2d 929 (*1st Dep't* 1962).

Meanwhile, on April 29, 1960, the prosecutor of Union County decided that he could not try defendant before the September 1960 term and notified the New York authorities accordingly. What transpired between March 10, the anticipated date for delivery, and April 29, we do not know. Union County did nothing more until December 6, 1962, when it instituted new proceedings under the Interstate Agreement and on January 23, 1963 it acquired temporary custody. Meanwhile for part of the period defendant had been occupied with charges both in Bronx County referred to above and in Nassau County, New York.

Defendant sought unsuccessfully to prevent his transfer in January 1963 to New Jersey by proceedings in both state and federal courts. Nonetheless defendant later prevailed, as we noted at the outset, on his motion to dismiss the Union County indictment on the ground that the prosecutor of that county had failed to bring him to trial in accordance with the Interstate Agreement. *State v. Chirra, supra,* 79 *N. J. Super.* 270. Thus defendant duplicated his success in Bronx County. The dismissal in Union County was not appealed and we have no occasion to consider the validity of that action.

While his motion to dismiss was pending in Union County, defendant sought to play Bergen County against Union County just as he had sought to pit Bronx County against Union County. Specifically, although he knew that Bergen County was awaiting the disposition of the Union County matter where his own motion to dismiss was pending, defend-

ant, by an undated letter received on February 13, 1963, informed the prosecutor of Bergen County that "I would like to dispose of this matter as soon as possible," and by letter of March 24, 1963 he said "I would like to at least be arraigned, so as to know with what I am being charged with." Meanwhile on March 11, 1963 counsel assigned by the Bergen County Court to represent defendant asked the prosecutor of Bergen to notify him when defendant is received from Union.

Defendant in fact was brought before the Bergen County Court on April 26, 1963 for arraignment. The record shows that defense counsel was then on vacation; that defendant was furnished a copy of the indictment; that a plea of not guilty was entered; and that defendant reserved the right to make all motions, including a motion to dismiss paralleling his then pending motion in Union County, which motion, defendant added, will "probably be made in this court." Defendant also asked to be remanded to Union County, and this was done.

It will be noted that defendant was thus in the Bergen County Court within the period of 120 days from his arrival in New Jersey. The motion in Union County was decided on May 15, 1963, just short of 120 days after that arrival.

## I.

The first question is whether the present matter is controlled by the unappealed judgment in the Union County case. Defendant urges it is *res judicata* of the State's failure to comply with the Interstate Agreement and hence the indictment must fall.

Article IV contemplates that the trial of all indictments in the receiving State shall be commenced "within 120 days of the arrival of the prisoner in the receiving State." See *N. J. S.* 2A:159A–4(c) quoted above. Defendant never reached New Jersey in the aborted proceedings of 1960 and hence the 120-day provision did not come into play. But Article V in *N. J. S.* 2A:159A–5, quoted above, provides for

dismissal not only if the time periods of Article III or Article IV are not met, but also "If the appropriate authority shall refuse or fail to accept temporary custody."

The clause just quoted, "If the appropriate authority shall refuse or fail to accept temporary custody," clearly applies to a request initiated by the prisoner under Article III. It is not clear whether it applies to a proceeding under Article IV, initiated by a prosecutor. And if it is assumed that the clause does so apply, it does not appear whether the New York warden ever transmitted to the prosecutor of Union County form No. 4 adopted by the rules referred to above and entitled "Offer to Deliver Temporary Custody." The form contains a direction that it be completed after the Governor's approval or after the expiration of the 30-day period. At any rate, *Chirra* held that the prosecutor of Union County had refused or failed to take custody within the meaning of the clause we are discussing. 79 *N. J. Super.*, at *p.* 279. The question is whether the prosecutor of Bergen County is foreclosed by the adjudged failure of the prosecutor of Union County.

Whether the failure in Union County bars the Bergen County proceeding depends entirely upon whether the Legislature intended that it should. The thesis advanced by defendant is that the statute contemplates that the prosecutor of one county will represent all other prosecutors, so that if he errs, the others are bound by his mistake. We think the statutory agreement quite plainly speaks the other way.

Although the statute indeed contemplates that all charges as to which detainers are lodged shall be disposed of within 180 days (Article III) or 120 days (Article IV) after arrival, it nonetheless treats each county as a separate jurisdiction, thus recognizing the reality that, notwithstanding that all prosecutions are in the name of the State, the responsibility is in fact parcelled among the county prosecutors and hence one prosecutor may not bind another by act or default. The statute accordingly treats each county as a distinct "jurisdiction."

Thus, for example, Article III, *N. J. S.* 2A:159A-3(d), which deals with a prisoner's request, provides that the custodian of the prisoner "shall forthwith notify all appropriate prosecuting officers and courts *in the several jurisdictions within the State* to which the prisoner's request for final disposition is being sent." So also Article IV, *N. J. S.* 2A:159A-4, which deals with a prosecutor's request, speaks in subsection (a) of the "appropriate officer of the jurisdiction" in which the indictment is pending and provides in subsection (b) that the custodian of the prisoner shall furnish the certificate there described not only to such requesting officer but also to "all other officers and appropriate courts in the receiving State who have lodged detainers against the prisoner."

· The forms adopted with the rules implementing the Interstate Agreement recognize the severalty of the prosecuting jurisdictions within the receiving State, and the directions appended to the forms call for separate notice to and agreement by the several prosecutors with the sending State. Thus form No. 4 captioned "Offer to Deliver Temporary Custody" contains directions that it be sent to the prosecutors of all counties which have lodged detainers. The form offers custody "Pursuant to the provisions of Article V of the Agreement on Detainers." It lists the detainers filed by all prosecutors and states to the offeree that "You are hereby authorized to transfer the inmate to custody of appropriate authorities in these *jurisdictions* for purposes of disposing of these indictments, informations or complaints." Form No. 7, captioned "Prosecutor's Acceptance of Temporary Custody offered in connection with a Prisoner's Request for Disposition of a Detainer," is to be executed by each prosecutor, and the form speaks as to each prosecutor of "your jurisdiction" and also refers to "other jurisdictions in your state," and invites an inquiry or a statement "as to the order in which you will receive custody" or a statement of any arrangement "already made with other jurisdictions in your state in this regard." So also form No. 8, captioned "Prosecutor's Acceptance of Temporary Custody

offered in connection with Another Prosecutor's Request for Disposition of a Detainer," is to be executed by each prosecutor as his separate acceptance of the sending State's offer, and this form too speaks of separate "jurisdictions" saying, "Use the space below to make inquiry as to order in which your jurisdiction will receive custody or to inform the warden of arrangements you have already made with other jurisdictions in your state in this regard."

█ Hence, assuming, as held in *Chirra*, that the prosecutor of Union County did "refuse or fail to accept temporary custody," we are satisfied the default is binding only in his "jurisdiction." This would be perfectly clear in the case of a request initiated by the prisoner under Article III, for surely if indictments are pending in three counties and the prosecutor of one of them fails to accept an offer of temporary custody, that failure would not bind the prosecutors of the other counties. There is no reason for a different view with respect to a proceeding under Article IV, and hence, assuming that *Chirra* correctly held to be applicable the clause "If the appropriate authority shall refuse or fail to accept temporary custody," it would follow that only the indictment in Union County would be affected by the mandate of the same section that "the appropriate court of the jurisdiction where the indictment * * * has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." Note that the statute does not visit such consequences upon all indictments but rather speaks in the singular. It follows that the judgment in *Chirra* has no force in the present matter.

## II.

We think the time period contained in *N. J. S.* 2A:159A–4(c), quoted above, applies to all indictments as to which detainers were lodged and hence that the Bergen prosecution comes within its terms, which we repeat for convenience:

"In respect of any proceeding made possible by this Article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

■ Nonetheless defendant cannot escape trial upon the basis of that provision since its terms and its purpose were met. It will be recalled that defendant was arraigned in Bergen County within the 120-day period; that defense counsel was then on vacation and defendant asked for leave to make a motion to dismiss the indictment and to be remanded meanwhile to Union County. The trial court granted defendant's request. The court's action constituted the grant of a continuance within the reason of this provision.

We reserve the question whether the pendency of defendant's motion to dismiss, which in fact prevented putting him on trial in Union County, operated to toll the running of the time period under the provision of *N. J. S.* 2A:159A–6(a), quoted above, that there shall be such tolling "whenever and for as long as the prisoner is unable to stand trial." We reserve also the question whether a prisoner will be heard to claim the benefit of the time period if he maneuvers to frustrate the effort of the prosecution to give him the benefit of that very provision.

### III.

■■ Defendant next contends that assuming the statute itself does not bar trial because of the passage of time, yet he has been denied his right to a speedy trial under *Article I, paragraph* 10 of our Constitution. The right to a speedy trial is a right to move for such a trial, and of course defendant did not so move. *State v. Smith,* 10 *N. J.* 84, 93 (1952); *State v. Appice,* 23 *N. J. Super.* 522, 528 (*App. Div.* 1952), affirmed 13 *N. J.* 286 (1953), *cert.* denied 346 *U. S.* 939, 74 *S. Ct.* 380, 98 *L. Ed.* 427 (1954); *State v. O'Leary,* 25 *N. J.* 104, 111 (1957); *State v. Dandridge,* 37 *N. J. Super.* 144

(*App. Div.* 1955); *State v. Von Atzinger,* 81 *N. J. Super.* 509, 512–513 (*App. Div.* 1963); Annotation, 57 *A. L. R. 2d* 302, 326 (1958). Defendant could have pressed a demand under Article III just as he did with respect to the indictment in Bronx County. *Cf. State v. Patton,* 76 *N. J. Super.* 353 (*App. Div.* 1962), affirmed o. b. 42 *N. J.* 323 (1964). Moreover, the prosecutor of Bergen County offered to try defendant in January 1959, as we recounted above, but defendant declined the opportunity. The one thing defendant never wanted was a trial of any kind.

Indeed, while complaining of the failure to bring him to trial, defendant simultaneously complains that he was brought to New Jersey before the expiration of the 30-day period in *N. J. S.* 2A:159A–4(a) and for that reason may not be subjected to a trial. In point of fact the 30-day period, which is measured from the time of the warden's receipt of the request for custody, had expired before defendant was brought to New Jersey and hence for that reason alone there is no substance to this further complaint.

Finally we note defendant also urges that he may not be returned to New York. We think it enough to say that we see no substance to the claim and that when the pending prosecutions here are concluded, defendant will be subject to disposition in accordance with the statute.

The order and judgment are affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.