90 N.J. Super. 464 (1966)
218 A.2d 158
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN S. MASON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1966.
Decided March 18, 1966.
*466 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Otto C. Staubach argued the cause for appellant (Mr. Lester Weiner (assigned counsel), attorney.)
Mr. Dominick A. Mirabelli, Assistant County Prosecutor, argued the cause for respondent (Mr. Leo Kaplowitz, Union County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This is an appeal from denial by the Union County Court of defendant's application for post-conviction relief sought under R.R. 3:10A, adopted by the Supreme Court effective January 2, 1964. Basically, defendant seeks to void his 1960 conviction for armed robbery because of the denial of his motion pending trial to dismiss the indictment on grounds of violation by the State of the Interstate Agreement on Detainers ("Interstate Agreement," hereinafter) to which New Jersey became a party April 18, 1958 by act of the Legislature. L. 1958, c. 12 (N.J.S. 2A:159A-1 *467 et seq.). Apart from the merits of defendant's position in that regard, he urges that post-conviction relief under R.R. 3:10A is an appropriate remedy because his earlier efforts to obtain appellate review of the 1960 decision against him were improperly rebuffed by this court as untimely and a 1962 attempt to secure post-conviction relief by means of habeas corpus was rejected on procedural grounds.
Defendant was indicted in Union County for armed robbery on July 2, 1958. While serving a term of imprisonment at the Green Haven State Prison at Stormville, New York, defendant received a letter dated January 7, 1959 from an assistant prosecutor of Union County requesting advisement as to whether he would "voluntarily consent to return to Union County for the purpose of arraignment and trial only in reference to Indictment No. 415 M-57 in which you and  are charged with armed robbery * * *." It should be here noted that it is not claimed by the State that written request was made at that time to any authorities of the State of New York for temporary custody or availability of the defendant, or that any New Jersey court "approved, recorded or transmitted" any such request, both of which are required for the inception of a proceeding by a receiving jurisdiction under Article IV of the Interstate Agreement. (The significance of these observations will appear infra.)
On January 22, 1959 there was received in the office of the Union County Prosecutor a form document obviously prepared by the correctional authorities of New York State for use in proceedings under the Interstate Agreement. This was entitled "Inmate's Notice and request," subtitled "(Pursuant to the provisions of the Code of Criminal Procedure, Section 669b[1])," addressed to the "District Attorney" of Union County and the Superior Court "of Union County," dated January 20, 1959, signed by defendant, and it requested "that a final disposition be made of the following Indictment * * * now pending against him * * *," designating the then pending *468 indictment for armed robbery. Along with the described notice was enclosed a "Certificate of Inmate Status," signed by the warden of the New York prison and specifying six items of information concerning defendant (such as term of commitment under which prisoner is being held, time already served, etc.), all required to be so certified by Article III of the Interstate Agreement, that Article specifying the procedure to be followed when the provisions of the act are invoked by a prisoner.
On February 20, 1959 the prosecutor wrote to the warden of Green Haven Prison acknowledging receipt of an original and copy of the Inmate's Notice and Request and of the Certificate of Inmate Status "pursuant to provisions of Code of Criminal Procedure, Section 669-b," and advising that the originals of each had been filed in the office of the Clerk of Union County. The letter stated that the prosecutor would accept the offer of the defendant to voluntarily return for trial of the indictment provided he "expressly waives his extradition rights and consents to accompany an authorized agent of this State * * *." It closed with a request that such consent and waiver be forwarded pursuant to Article V of the Interstate Agreement. Respecting this communication, it is noteworthy that paragraph (e) of Article III provides that any request for final disposition by a prisoner under that article shall also be deemed to be a waiver of extradition with respect to any charge contemplated thereby; also that Article V of the act provides that in response to a request made under Article III or Article IV the appropriate authority in the sending state "shall offer to deliver temporary custody" of the prisoner to the appropriate authority in the receiving state.
On May 7, 1959 the warden of Green Haven Prison sent the prosecutor a formal offer to deliver temporary custody of the prisoner for purposes of "speedy and efficient" trial of the indictment "as requested by the prisoner in his notice forwarded to you January 20, 1959" and "pursuant to Article V" of the Interstate Agreement. There was also enclosed another *469 "Certificate of Inmate Status" dated May 6, 1959 and a waiver of extradition signed by the defendant.
On May 13, 1959 the prosecutor wrote to the warden of Green Haven Prison that he would accept temporary custody of the prisoner on or about June 18, 1959. On May 14, 1959 he inquired as to the earliest date the prisoner would be available. After receiving a response dated May 18, 1959 that the prisoner could be picked up any weekday, the prosecutor wrote the warden May 27, 1959 to the effect that "because of the crowded condition of our court calendar we could not conceivably accommodate Mr. Mason before the September Session of the court." On August 14, 1959 the chief Union County detective wrote the warden that defendant's case had been set for trial September 14, 1959 and that custody of him would be taken September 2, 1959. The warden was asked to ascertain from defendant whether he desired the New Jersey court to assign him counsel.
On August 28, 1959 defendant wrote the prosecutor that he no longer consented to extradition because of the lapse of 180 days from the date (January 20, 1959) of his request for disposition of the indictment. He was thereby apparently relying upon the same provisions of the Interstate Agreement he urges on this appeal. N.J.S. 2A:159A-3(a); 159A-5(c). Nevertheless, the New York authorities delivered custody to the prosecutor's representatives on October 10, 1959 at the prosecutor's request.
On October 23, 1959 defendant was arraigned and pleaded not guilty, and counsel was assigned to represent him. Defendant thereupon made a motion returnable January 18, 1960 to dismiss the indictment with prejudice by reason of failure of the State to try him within 180 days after his request under the Interstate Agreement in January 1959 that final disposition of the indictment be made. The record does not show what, if any, steps were taken by the State to set a trial date between October 23, 1959 and the filing of defendant's motion.
*470 For the better understanding of the basis for the denial by the Union County Court of defendant's motion and of the procedural steps in the matter thereafter, we now fill in the outline of the Interstate Agreement, portions of which have already been adverted to. This legislation has been the subject of discussion in previous decisions in this State, none of which are determinative of the meritorious questions now presented for adjudication. See State v. Masselli, 43 N.J. 1 (1964); State v. West, 79 N.J. Super. 379 (App. Div. 1963); State v. Chirra, 79 N.J. Super. 270 (Law Div. 1963); Carrion v. Pinto, 79 N.J. Super. 13 (App. Div. 1963). See also the comprehensive analysis of the background of the act in People v. Esposito, 201 N.Y.S.2d 83 (Cty. Ct. 1960).
Article I of the Interstate Agreement (N.J.S. 2A:159A-1) states its purpose and object as follows:
"The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party States also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures."
It has been properly held that since the purpose of this statute is remedial, it should be accorded liberal construction in favor of prisoners within its purview. State v. West, supra, 79 N.J. Super., at p. 384; State v. Chirra, supra, 79 N.J. Super., at p. 277; People v. Esposito, supra, 201 N.Y.S.2d, at pp. 88-89. And Article IX states that: "This agreement shall be liberally construed so as to effectuate its purposes." But note the caveat in State v. Masselli, supra, as to situations wherein the prisoner "maneuvers to frustrate the effort *471 of the prosecution" to give him the benefit of the statute. 43 N.J., at p. 12.
As already indicated, the act contemplates that its machinery is invocable either by the prisoner, under Article III (N.J.S. 2A:159A-3), or by the prosecutor of a receiving state, under Article IV (N.J.S. 2A:159A-4). Time periods for consummation of such procedures by trial of the pending charges are set forth in the respective Articles, and sanctions relevant to the default asserted by this defendant are contained in Article V. Where the act is invoked by the prisoner, Article III (a) provides that "he shall be brought to trial within 180 days after" he causes to be delivered to the prosecutor and court the statutory notice and demand, "provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."
Under Article IV, where the appropriate officer of the receiving state invokes its provisions by the means specified in (a) thereof, (c) thereof provides that: "In respect of any proceeding made possible by this Article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving State," coupled with a proviso for empowering a grant of continuance by the court set forth in the same phraseology as contained in Article III as quoted above.
Article V(c) (N.J.S. 2A:159A-5(c)) sets forth the provision for sanctions relied upon by defendant as follows:
"(c) If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."
The only express provision for tolling the time periods specified in Articles III and IV is that stated in Article VI (N.J.S. 2A:159A-6): "[W]henever and for as long as the *472 prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter."

I.
The trial court denied defendant's pretrial motion to dismiss the indictment with prejudice on the following grounds: (1) this was a proper case for a continuance by the court beyond the 180 days specified by the act; (2) the 120-day period after arrival in the receiving state was applicable, and that period had not expired when the motion was made; (3) trial is timely if had at any time before the return of the prisoner to the original place of imprisonment. We find none of these grounds to have merit.
As to that last stated, the reliance by the court was on the last sentence of N.J.S. 2A:159A-3(d), intended primarily to void all untried indictments in the receiving state for which detainers were lodged against the prisoner, if not tried before his return to the sending state, where he invoked Article III. Patently there is no intent thereby to undo or supplant the 180-day period prescribed by (a).
The 120-day period after arrival in the receiving state was not here applicable for the simple reason that the Interstate Agreement was not invoked by the prosecutor but solely by the defendant. The January 7, 1959 informal letter from the prosecutor to the prisoner neither referred to the Interstate Agreement, nor, as his been noted above, complied with the specific requirements of Article IV(a) of the act for bringing that Article into play. To hold otherwise would do patent violence to the precept for liberal construction of the statute in favor of prisoners. This conclusion is reinforced by the prisoner's disregard of the letter and institution of his own procedure under Article III of the Interstate Agreement on January 20, 1959, with the aid of the New York prison authorities, and with substantial compliance with the provisions thereof. It is noteworthy that on September 8, 1959, in replying to an inquiry about the history of this matter from the office of the counsel to the Governor, the prosecutor wrote: *473 "The above-mentioned prisoner * * * gave us a purported notice and certificate pursuant to N.J.S.A. 2A:159a-3 (sic) requesting final disposition of his case on January 22, 1959." (Emphasis ours)
It is clear to us that Article III(a) was here applicable, and it is obvious that the 180-day period specified therein had expired when the defendant's motion came on to be heard January 18, 1960, whether that period is deemed to have been incepted on January 22, 1959 or on May 7, 1959, when the warden of Green Haven Prison sent the prosecutor the formal tender of temporary custody.[2]
Nor can we accept the trial court's determination that the Interstate Agreement contemplates that the court in the receiving state may, notwithstanding the previous lapse of the 180-day period specified by Article III(a), extend that period by a "continuance." Once the 180-day period has expired without trial of the indictment (or previous grant of continuance thereof for good cause) the act in mandatory language dictates its dismissal "with prejudice." N.J.S. 2A:159A-5(c) (quoted above). As already noted, nothing can toll the running of the 180-day period except inability of the prisoner to stand trial if so determined by the court. N.J.S. 2A:159A-6. Certainly the August 1959 effort of the defendant by letter to the prosecutor to withdraw his previous consents to extradition, constructive and actual, could not have had that effect as a matter of law. It would be nugatory even if the 180-day period had not expired by then. In any event, it was not prejudicial to the prosecutor since (1) he ignored it and took custody of the defendant, and (2) the *474 180-day period had in fact already expired (see fn. 2, supra). The intervening court vacation and the crowded condition of the trial calendars may possibly have warranted a discretionary continuance of trial beyond the 180 days, if applied for before the expiration thereof, but those circumstances do not per se toll the running of the period.
To hold that the prosecutor may permit the 180-day period to expire, and then, at any time thereafter when the prisoner moves to invoke the sanction of dismissal, resist that application by a request for extension nunc pro tunc of the period, would be to eviscerate a vital element of the statutory scheme designed to effectuate its salutary policy. Cf. State v. Chirra; People v. Esposito, both supra. Strict enforcement of the literal terms of the statute in this regard visits no hardship on prosecutors, since they may make timely requests for necessary continuances, and at the same time it stimulates prompt and expeditious disposition of the class of indictments within the legislative concern.
We conclude that denial of defendant's motion to dismiss the indictment was error.

II.
We pass to consider whether procedural considerations preclude grant to defendant on this post-conviction application of the substantive relief he was erroneously denied in 1960. The oral ruling against defendant on January 18, 1960 was incorporated in a formal order entered the same day, and trial of the indictment began that day. A jury verdict of guilt was rendered February 3, 1960, and defendant was sentenced March 11, 1960 to a 5-7-year term of imprisonment, to commence upon expiration of the term he was serving in New York.
On February 28, 1960 the defendant drew (pro se) and signed a handwritten document on stationery of the Union County jail, where he was apparently confined awaiting sentence, headed "Notice of Appeal." This was addressed to "Clerk of Union County Court," with an indorsement noting *475 transmittal of copies to the prosecutor and the Attorney General. A copy thereof is stamped received by the prosecutor's office February 29, 1960 and by the Union County Clerk's office March 22, 1960. Moreover, the copy submitted to us bears a handwritten legend in writing different from the handwriting in the body of the notice of appeal: "Sent true copy to Clerk of Superior Court Appellate Division, Trenton, N.J. 3-22-60 W.M." (Upon inquiry we are informed that Wilbert Miles was a clerk in the office of the Union County Clerk at that time.) The body of the notice of appeal is directed to the denial of the motion for dismissal of the indictment and recites that the signer is without funds and is filing the notice as a pauper. For reasons not apparent in the records, this notice never fructified into a docketed appeal. (R.R. 1:2-8(a) required the clerk of the trial court to send a copy of the notice to the clerk of the appellate court for docketing.)
On June 6, 1960, on stationery of the New York prison at Stormville (Green Haven), the defendant wrote to the assignment judge of Union County, with notation of transmittal of copy to the clerk of the Superior Court, Appellate Division, styling his plea as that of a pauper, advising that he had filed a notice of appeal, and requesting that he be supplied without cost with copies of the "trial minutes, indictment, warrant" and "all other papers relative to his trial," as he needed same to "perfect an effective appeal." A judge of the Union County Court replied under date of June 7, 1960 advising defendant that his application should be made to the Appellate Division of the Superior Court. A formal (pro se) petition to this court for leave to appeal from the conviction as an indigent was sworn to June 28, 1960, filed July 5, 1960, and denied by order dated November 5, 1960 as having been filed out of time.[3] The clerk's file in that matter shows only the petition and order.
*476 Defendant's next step was to file an application for habeas corpus November 5, 1962. He was assigned counsel and the matter was heard in the Union County Court December 20, 1962. At the conclusion of the hearing the writ was dismissed on the sole ground that the defendant was improperly using habeas corpus to serve the function of an appeal which he had neglected to take in time. Successive applications for leave to appeal in forma pauperis from that ruling were denied by this court and by the Supreme Court as without merit. It does not appear that either court had before it in the detail described above the efforts of the defendant without aid of counsel to gain appellate review of the January 18, 1960 order of the county court and of the judgment of conviction. Nor, of course, did defendant have the aid of counsel in either of the last mentioned applications for leave to appeal in forma pauperis to the Appellate Division and the Supreme Court, respectively.
The current application for post-conviction relief, filed by defendant pursuant to R.R. 3:10A, was heard by a Union County Court judge December 18, 1964, defendant being represented by assigned counsel. After hearing, the petition was denied on the sole ground that it was barred by R.R. 3:10A-5, which provides that a prior adjudication upon the merits of any ground for relief in the proceedings resulting in the conviction shall be conclusive on the parties. Thus, defendant was held bound by the pretrial dismissal of his motion in 1960, his reliance then and now being upon the dismissal provisions of the Interstate Agreement discussed at length above.
If, however, defendant's efforts to appeal the trial court determinations in the conviction proceedings were improperly thwarted, R.R. 3:10A-5 could obviously not be fairly applied to bar his present effort to secure relief, under R.R. 3:10A-2 (a), for "substantial denial in the conviction proceedings of defendant's rights under the * * * laws of the State of New Jersey." While, to be sure, the post-conviction remedy may not be used as a substitute for direct appeal *477 from the conviction, State v. Smith, 43 N.J. 67, 74 (1964), that consideration does not apply if what is now determined to have been a timely appeal was at the time denied prosecution. We thus investigate whether the efforts at appeal made by defendant in 1960 should be deemed to have preserved his right to obtain the appellate determination he has been pressing for ever since.
The judgment of conviction of defendant entered March 11, 1960 (date of sentencing) was appealable within three months, or on or before June 11, 1960, R.R. 1:3-1(a), by filing a notice of appeal with the County Court, R.R. 1:2-8(a). Moreover, this court had the power to extend the time for appeal an additional 30 days on a showing of good cause. R.R. 1:27B(d). Interlocutory orders in criminal causes such as the order of January 18, 1960 denying the motion to dismiss the indictment were, in 1960, subject to discretionary review in the Appellate Division by leave of court applied for within ten days. R.R. 2:2-3(a); 3:5-5(b)(6)(a). (See R.R. 1:2-4(c)(1), as amended July 27, 1961, effective September 11, 1961.) The order of January 18, 1960 was, of course, reviewable in any event upon appeal from the final judgment of conviction.
As seen above, defendant on two occasions prior to June 11, 1960 did make attempts to appeal from the denial of his motion to dismiss the indictment, directly or indirectly. On both occasions he was incarcerated, indigent (or claiming so to be, with no indication of the contrary), and without legal representation or advice of counsel. On February 28, 1960 defendant sent a notice of appeal to the Union County Court which was stamped filed there March 22, 1960. Viewed as an attempted review of the order of January 18, 1960, it was technically ineffective because beyond ten days and not the subject of leave granted by this court. Viewed as an appeal from the judgment of conviction, it was premature. However, defendant's letter to the assignment judge of June 6, 1960 (still within the three-month appeal period) requesting leave to appeal in forma pauperis, and referring to his having filed *478 a notice of appeal, manifested objectively a continuing bona fide intention to prosecute an appeal which he thought was then already pending. Furthermore, had defendant had counsel to advise him, the petition for leave to appeal filed July 5, 1960 could have been validated as a timely appeal within the 30-day extension period allowable under R.R. 1:27B(d). Such an application would have merited favorable action under the circumstances.
It is the general rule that attempts to appeal within time by convicted defendants, particularly when incarcerated and not having advice or assistance of counsel, will be liberally appraised so as to save the right of review where reasonably possible as against objections of untimeliness. See Coppedge v. United States, 369 U.S. 438, 442, fn. 5, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962); Lemke v. United States, 346 U.S. 325, 74 S.Ct. 1, 98 L.Ed. 3 (1953) (notice of appeal filed prior to judgment); Fallen v. United States, 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964) (delivery of notice to prison authorities for mailing to court); Williams v. United States, 88 U.S. App. D.C. 212, 188 F.2d 41 (D.C. Cir. 1951) (same); O'Neal v. United States, 272 F.2d 412 (5 Cir. 1959) (appeal bond filed in District Court); Belton v. United States, 104 U.S. App. D.C. 81, 259 F.2d 811 (D.C. Cir. 1958) (letter written to District Court; appeal saved on collateral attack three years later); Pratti v. United States, 350 F.2d 290 (9 Cir. 1965) (receipt of notice by clerk of court sufficient although no payment of filing fee).
See also Ford v. State, 138 N.W.2d 116 (Iowa Sup. Ct. 1965) (appeal entrusted to prison officer will be saved where late filing because of wrongful omission by officer):
"[A]lthough the state has no duty to see that every convicted prisoner perfects an appeal * * * the courts of this state are alert to protect the right of an imprisoned defendant, acting in propria persona, to appeal from a judgment of conviction of crime where he diligently attempts to timely initiate and prosecute such an appeal."
Application of Gonsalves, 48 Cal.2d 638, 311 P.2d 483, 488 (Sup. Ct. 1957) (placing in prison outgoing mail of letter of *479 appeal which was never delivered); Keeton v. State, 278 Ala. 81, 175 So.2d 774 (Ala. Sup. Ct. 1965); Perez v. State, 143 So.2d 663 (Fla. App. 1962); Relf v. State, 267 Ala. 3, 99 So.2d 216 (Sup. Ct. 1957).
The Supreme Court of this State has heretofore, by informal directions to this court, indicated that where a substantial effort has been made by an incarcerated defendant to appeal a conviction within the time limited, including an application for leave to appeal in forma pauperis, jurisdiction over the appeal should be accepted. That view is in harmony with the authorities cited above. We deem it applicable here. Under all the attendant circumstances, and having in view the totality of defendant's actions in 1960 aimed at securing review of the denial of his motion to dismiss the indictment, we conclude that appellate jurisdiction should not have been rejected by this court in the matter as it was by the denial of the application for leave to appeal as an indigent because out of time.
The instant post-conviction proceeding is in the particular situation here manifested an eminently appropriate procedural vehicle by which to correct the injustice constituted by the erroneous denial of defendant's pretrial motion to dismiss the indictment pursuant to the provisions of the Interstate Agreement and of his right of appellate review thereof. The intervening habeas corpus proceedings do not stand in the way. The trial court's adjudication in that matter falls with our present determination that defendant did make adequate efforts to take an appeal. The subsequent denials of leave to appeal as an indigent by this court and the Supreme Court were, of course, not adjudications of the merits of any question. Moreover, see Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963), which appears to hold that a state must constitutionally afford an indigent an effective appeal from a denial of postconviction relief without preliminary screening of the merits of the appeal where appeal without screening is available to a moneyed defendant.
*480 The judgment is reversed and remanded to the Union County Court with directions to set aside the conviction of the defendant as void, to dismiss the indictment with prejudice, and to make such supplementary orders as may be necessary. R.R. 3:10A-12. Assigned counsel shall continue to represent the defendant until these directions shall have been effectuated.
NOTES
[1] This is the New York counterpart of the Interstate Agreement.
[2] Although the tender should have accompanied the original request for final disposition by the prisoner, N.J.S. 2A:159A-5(a), the technical fault here is attributable to the New York warden, not the prisoner, see N.J.S. 2A:159A-3(c), and it will not be permitted to prejudice the prisoner's rights under the Interstate Agreement. See People v. Esposito, supra, 201 N.Y.S.2d, at p. 91. Were it material, therefore, we would hold that the warden's delay in forwarding the tender does not stop the running of the 180-day period from January 22, 1959, when the prosecutor received defendant's request.
[3] The appeal was required to have been filed within three months of March 11, 1960, the date of judgment on the conviction. R.R. 1:3-1 (a).