635 A.2d 527

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JESSE O. JOHNSON, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 6, 1993—Decided December 16, 1993.

Before Judges KING, A.M. STEIN and A.A. RODRIGUEZ.[1]

*Frank A. Salvati,* Assistant County Prosecutor, argued the cause for appellant (*Harris Y. Cotton,* Gloucester County Prosecutor, attorney; *Mr. Salvati,* on the letter-brief).

*Jay L. Wilensky,* Assistant Deputy Public Defender, argued the cause for respondent (*Zulima V. Farber,* Public Defender of New Jersey, attorney; *Mr. Wilensky,* on the brief).

*Jesse O. Johnson,* respondent, also filed a brief *pro se.*

The opinion of the court was delivered by

KING, P.J.A.D.

The State appeals from an order of June 1, 1993, granting defendant post-conviction relief, *R.* 3:22, setting aside the judgment of conviction for armed robbery entered under Gloucester County Indictment # I–0614–81 on August 5, 1988, and dismissing the indictment with prejudice. On June 17 we granted a stay of this order pending appeal, accelerated the appeal, and heard argument on the first available calendar after the appeal was perfected. We conclude that the Law Division judge erred as a matter of law, reverse and reinstate the conviction. We find no violation of the Interstate Agreement on Detainers (IAD), *N.J.S.A.* 2A:159A–1 to –15, and no valid ineffective assistance of counsel claim which justify dismissal of the indictment.

---

[1] Judge Rodriguez was not present at oral argument. With consent of counsel, he reviewed a tape recording of the argument.

## I

Defendant was found guilty on January 25, 1988 on a charge of armed robbery committed in Mantua Township, Gloucester County, on February 16, 1982. The conviction was affirmed by this court on November 27, 1990, and a petition for certification was denied on May 1, 1991. Defendant was serving an extended 24–year term with eight years' parole ineligibility, imposed on August 5, 1988, when his petition for post-conviction relief was granted on June 1, 1993.

Our inquiry focuses on the 25–month period from 1982 to 1984 when defendant was serving a sentence in the Commonwealth of Pennsylvania for another crime. During this period, New Jersey allegedly failed to pursue a request, initiated by a detainer filed by the Gloucester County prosecutor in Media, Delaware County, to obtain defendant to stand trial in New Jersey for the 1982 robbery in Mantua.

The material facts are contained in a somewhat murky and meager stipulation agreed upon by the parties. These facts are incorporated in the written opinion of the Law Division judge dated May 28, 1993, and were confirmed to a large extent at a lengthy oral argument in the Law Division which took place on November 6, 1992.

On February 26, 1982 defendant was arrested on Pennsylvania criminal charges in Delaware County, Pennsylvania—just across the Delaware River from Gloucester County, New Jersey. On March 8, 1982, Superior Court Judge Samuel H. Bullock, who later represented defendant as counsel at the trial for this February 1982 Mantua robbery charge, "authorized a detainer against defendant for charges arising ... [in Mantua,] New Jersey for robbery, possession of a weapon for an unlawful purpose, and receiving stolen property." On April 6, 1982 defendant petitioned for "a writ of habeas corpus in Delaware County, Pennsylvania on [the Mantua] robbery charges," in resistance to the New Jersey detainer. The stipulation says that "a New Jersey Governor's warrant was due to be lodged on or before April 7, 1982 but said

warrant was never filed." Apparently, the Pennsylvania authorities had told Gloucester County that their detainer request would not be honored until the pending Pennsylvania charges were adjudicated.

A hearing was then held in Delaware County, Pennsylvania, on May 14, 1982 before Judge Wright of Common Pleas Court on defendant's pending petition for habeas relief from the New Jersey detainer; at that time "the Commonwealth was granted an extension in which to lodge the Governor's warrant, which extension would expire [on] June 7, 1982." No "Governor's warrant" was lodged and the New Jersey detainer against the defendant was dismissed on June 11, 1982 by Judge Surrick of Common Pleas Court, after defendant had been sentenced to a three to six-year prison term on June 7, 1982. A new detainer finally was filed against defendant but not until July 23, 1984, while he was still serving his three to six-year sentence in the Commonwealth.

Thus we see a 25–month hiatus between June 1982 and July 1984 when there was no interstate activity by New Jersey directed at obtaining defendant for a trial here on the 1982 New Jersey robbery charges. As we understand this record, neither the defendant nor the Commonwealth wanted to cooperate with New Jersey's request for defendant's return here before defendant was sentenced in Pennsylvania on June 7, 1982. After defendant's sentencing, New Jersey seemingly lost interest in defendant and did nothing until July 1984 when the new detainer was filed. During this period, defendant never initiated a request under the IAD for New Jersey to obtain jurisdiction and proceed against him. *See N.J.S.A.* 2A:159A–3; Article III; (180–day period to trial or dismissal on request initiated by defendant). As we also understand this record, (1) defendant throughout, from 1982 to 1986 or into 1987, resisted New Jersey's attempts to return him to this jurisdiction; never acceding to return voluntarily, and (2) defendant has never claimed that he suffered any adverse consequences, (*e.g.,* lost commutation credits, ineligibility for inmate programs, parole prejudice) because of New Jersey's initially

feeble and eventually aborted attempt to obtain him in 1982, or throughout the 25–month hiatus when no New Jersey detainer was pending against him.

On December 10, 1984, after the July 23, 1984 detainer was lodged, Judge Brominski in Luzerne County, Pennsylvania, where defendant was serving his prison time, signed an order transferring defendant to New Jersey "pursuant to the Interstate Agreement on Detainers Act which was triggered by the [current] New Jersey Detainer." Defendant again resisted New Jersey's transfer request. Finally, in December 1985, a New Jersey Governor's warrant was issued. On February 8, 1985 defendant was released from prison in Pennsylvania, apparently despite the detainer. We gather that a Governor's warrant was never actually executed by the Gloucester County authorities at that time in Pennsylvania. Shortly after February 8, 1985, defendant finally was arrested in New Jersey on the Governor's warrant, posted bail and was released. Defendant's appeal to Pennsylvania's intermediate court of appeals, in which he continued to resist his "transfer" to New Jersey, was rejected in April 1986. Defendant was ultimately picked up, probably "on the street," on an outstanding New Jersey warrant on June 5, 1986 and has been in custody in New Jersey or Pennsylvania ever since. We also conclude from this record that defendant was returned to Pennsylvania as a parole violator for some period of time between June 1986 and his jury trial in January 1988 in Gloucester County on the Mantua robbery charge. We cannot tell the length of that period of incarceration in Pennsylvania.

On November 12, 1986 Samuel H. Bullock, Esquire, by then a practicing attorney and retained by defendant's family, filed a motion to dismiss the indictment for denial of a speedy trial. Judge Holston denied defendant's motion on February 13, 1987, after oral argument. Defendant was not present in court at that time; defendant's appearance at that oral argument was expressly waived on the record by Mr. Bullock.

A claim of error for denial of defendant's speedy trial motion was raised and rejected on the direct appeal from the conviction taken by the Public Defender on defendant's behalf. In our opinion of November 27, 1990, affirming defendant's conviction, we said: "The denial of the motion to dismiss the indictment is affirmed substantially for the reasons expressed by Judge Holston in his oral opinion of February 13, 1987. We add only that the delay was largely attributable to defendant who resisted extradition from the very beginning. *See State v. Long,* 119 *N.J.* 439, 470–471, 575 *A.*2d 435 (1990)." Defendant did not raise any claim based on the IAD either at the pretrial stage, when he claimed denial of a speedy trial before Judge Holston, or on the direct appeal to this court after his conviction.

## II

■ Defendant contended in the Law Division on this PCR petition that the 25–month hiatus of inactivity by the prosecuting authorities between the dismissal of the detainer on June 11, 1982 and the filing of the new detainer in July 1984 fatally flawed any later attempt to prosecute him in New Jersey. Defendant insisted that because the Gloucester County prosecutor filed the detainer in 1982 and then twice failed to appear in Pennsylvania to obtain his transfer to New Jersey, the prosecutor was barred from proceeding against him any further, even though the detainer was dismissed on July 11, 1982.

Another Law Division judge (not Judge Holston) agreed to set aside the conviction and dismissed the indictment against defendant, based on his understanding of *State v. Chirra,* 79 *N.J.Super.* 270, 191 *A.*2d 308 (Law Div.1963). The judge rejected the State's contention that there was no fatal violation of the IAD by the prosecutor even though defendant at all times had resisted extradition or transfer to New Jersey, never invoked the IAD, and, when finally returned to this State, was tried within the 120–day requisite period plus allowable extensions.

■ The record, as we have noted, establishes no prejudice to defendant's rights as an inmate while he was in custody in Pennsylvania, because of the alleged 25–month "delay." During that period he was serving his Pennsylvania sentence unfettered by any restrictions a New Jersey detainer could have created. Prisoners with detainers are frequently deprived of the ability to take advantage of programs like work or study release, trustee status, or transfer to medium or low-security settings and so forth. The purpose of the IAD, drafted by the Council of State Governments in 1956, and adopted in 48 states, the District of Columbia, Puerto Rico, the Virgin Islands and the United States, including New Jersey in 1958, was to avoid impediments to rehabilitation caused by pending detainers. *See Carchman v. Nash,* 473 *U.S.* 716, 719–20, 105 *S.Ct.* 3401, 3403, 87 *L.Ed.*2d 516, 520 (1985). No such impediment could have occurred here because there was no New Jersey detainer against defendant during the 25–month period.

The purpose of the IAD is related in the first section, *N.J.S.A.* 2A:159A–1, Article I, which says in pertinent part:

The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints.

A prisoner may initiate a request which triggers the necessity for trial within 180 days after delivery. *N.J.S.A.* 2A:159A–3(a); Article III. The State may demand a prisoner for trial under *N.J.S.A.* 2A:159A–4(a); Article IV. If the State obtains the prisoner "any proceeding made possible by this Article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving State, ..." *N.J.S.A.* 2A:159A–4(c). If these time limits are violated the IAD requires dismissal of the indictment with prejudice. *N.J.S.A.* 2A:159A–3(d); *N.J.S.A.* 2A:159A–4(e).

The defendant relies on *N.J.S.A.* 2A:159A-4(a) and the interpretation placed on the statute in *State v. Chirra, supra,* 79 *N.J.Super.* at 277–78, 191 *A.*2d 308, despite the fact that he never, in fact, "arrived" in New Jersey but always resisted coming here. In *Chirra,* the Law Division judge "liberally construed" the IAD to bar prosecution in this State because the Union County Prosecutor had demanded sentenced prisoners from New York by filing detainers which he later apparently abandoned after New York had offered to turn over the prisoners to him. About two years elapsed before the prosecutor finally renewed his efforts to obtain these defendants from New York for trial. The defendants were available for trial for most of these two years, during which period Union County did nothing when it could have secured the defendants for trial for the asking and the taking.

The Law Division judge in *Chirra* held that the Union County Prosecutor was barred from proceeding, even though the defendants never actually arrived in this State to trigger the 120–day period for trial. The judge said that "the statute, as this court construes it, requires greater sedulity and expeditious action on the part of law enforcement officials, when the provisions of the [IAD] are invoked by them...." *Id.* at 277, 191 *A.*2d 308, and further ruled that the prosecuting officials "must continue their effort to obtain delivery of the prisoner from the other state with all reasonable diligence and dispatch." *Id.* at 278, 191 *A.*2d 308. The *Chirra* decision was never appealed but later was invoked by one of these same defendants as compelling dismissal of a Bergen indictment against him, on *res judicata* grounds. *See State v. Masselli,* 43 *N.J.* 1, 202 *A.*2d 415 (1964). Our Supreme Court in *Masselli* rejected the *res judicata* contention, essentially because different county prosecuting authorities were involved. As to the Law Division's specific holding in *Chirra,* the Supreme Court refused to confer approval on it, saying only that: "The dismissal in Union County was not appealed and we have no occasion to consider the validity of that action." *State v. Masselli, supra,* 43 *N.J.* at 7, 202 *A.*2d 415.

The Law Division's decision in *Chirra* seemed to rest on the proposition that: "If the prisoner is available for transfer, his custody must be accepted by such prosecuting officials." *State v. Chirra, supra,* 79 *N.J.Super,* at 278, 191 *A.*2d 308. *Chirra* relied strongly on language in Article V of the IAD, *N.J.S.A.* 2A:159A–5(c) which states "if the appropriate authority shall refuse or fail to accept temporary custody of said person," the court of the demanding jurisdiction shall dismiss the indictment with prejudice. In *State v. Masselli, supra,* 43 *N.J.* at 8–9, 202 *A.*2d 415, our Supreme Court cast considerable doubt on the *Chirra* analysis, saying:

Article IV contemplates that the trial of all indictments in the receiving State shall be commenced "within 120 days of the arrival of the prisoner in the receiving State." *See N.J.S.A.* 2A:159A–4(c) quoted above. Defendant never reached New Jersey in the aborted proceedings of 1960 and hence the 120-day provision did not come into play. But Article V in *N.J.S.A.* 2A:159A–5, quoted above, provides for dismissal not only if the time periods of Article III or Article IV are not met, but also "If the appropriate authority shall refuse or fail to accept temporary custody."

The clause just quoted, "If the appropriate authority shall refuse or fail to accept temporary custody," clearly applies to a request initiated by the prisoner under Article III. It is not clear whether it applies to a proceeding under Article IV, initiated by a prosecutor. And if it is assumed that the clause does so apply, it does not appear whether the New York warden ever transmitted to the prosecutor of Union County form No. 4 adopted by the rules referred to above and entitled "Offer to Deliver Temporary Custody." The form contains a direction that it be completed after the Governor's approval or after the expiration of the 30-day period.

We detect a strong reluctance on the Supreme Court's part in *Masselli* to equate abandonment of a detainer by the prosecutor with a "refusal or failure to accept temporary custody" within the meaning of *N.J.S.A.* 2A:159A–5(c), compelling a dismissal of the criminal charges with prejudice. *See also Masselli,* 43 *N.J.* at 11, 202 *A.*2d 415. Upon careful reading, *Masselli* is surely no ringing endorsement of *Chirra*'s analysis. The Supreme Court in *Masselli* recognized the reality of the situation before it, saying that, "[I]ndeed, the record makes it perfectly plain that defendant was determined to avoid a trial on the merits [in Bergen County]." *Id.* at 6, 202 *A.*2d 415. The Court further commented that, "[w]hile [defendant's] motion to dismiss was pending in Union County,

defendant sought to play Bergen County against Union County just as he had sought to pit Bronx County against Union County." *Id.* at 7, 202 *A.*2d 415. The defendant's persistent, manipulative conduct and resistance to the entreaties of the demanding state for custody and a quick trial or disposition of open charges was, in our view, astutely perceived in *Masselli* as contrary to the undergirding policy of the IAD and was, we think, a strong factor in the Court's decision to decline relief in *Masselli.* Moreover, we see nothing in our reading of *Masselli* or *Chirra* which suggests New Jersey's detainers filed in New York were ever dismissed. In the case before us, the detainer was promptly dismissed when New Jersey did not appear to claim the defendant and could not prejudice defendant's status while in Pennsylvania custody.

We conclude that, in reality, the Gloucester County authorities never did "refuse or fail to accept custody" of defendant in this case within the meaning of *N.J.S.A.* 2A:159A–5(c). True, they failed to show up in Delaware County, Pennsylvania on two occasions and on June 11, 1982 suffered a dismissal of their detainer. But we are certainly not convinced on this record, which demonstrates persistent resistance by defendant to New Jersey's efforts to obtain his custody, that defendant was ever consensually available to New Jersey authorities so that his custody could actually be "refused" by them. Our review of the IAD persuades us that the compact is a two-way street. A defendant cannot, at the same time, both resist custody in the demanding state and also claim that his charges should be dismissed as a reward for his lack of cooperation with the proposed transfer. This is inconsistent with the intent of the IAD. This is especially true where the detainer has been dropped and no longer operates as an impediment to a defendant's rehabilitative program in the custodial state.

We are in accord with the views expressed in *State v. Hoimes,* 214 *N.J.Super.* 195, 201, 518 *A.*2d 773 (App.Div.1986), where we said that the purpose of the IAD is to encourage the orderly disposition of untried charges pending against defendants already

incarcerated in other jurisdictions because "detainers based on untried indictments produce uncertainties which interfere with prisoner treatment and rehabilitative programs." We also observed that measuring technical compliance with the IAD is "essentially a question of reasonableness." *See State v. Stiles*, 233 *N.J.Super.* 299, 307, 558 *A.*2d 1333 (App.Div.1989). And we also are mindful that "the dispute is not a private controversy between the prosecutor and the defendant. *Cf. State v. Ashby*, 43 *N.J.* 273, 276 [204 *A.*2d 1] (1964). The public interest is involved...." *See State v. Lippolis*, 107 *N.J.Super.* 137, 149, 257 *A.*2d 705 (App.Div. 1969) [Kolovsky, J., dissenting], *rev'd*, 55 *N.J.* 354, 262 *A.*2d 203 (1970) (adopting dissent which construed IAD time deadlines).

For these reasons, we find nothing compelling or persuasive in the *Chirra* approach, adopted by the Law Division judge here, as pertinent to the case before us, especially where the defendant here has shown no prejudice to his status while a prisoner in Pennsylvania, and did not himself invoke the IAD but actively resisted all attempts by New Jersey, including an appeal in the Pennsylvania courts, to secure his presence for trial, both before and after the 25-month lull. A judge no doubt has the power to dismiss an indictment with prejudice where the IAD is violated, either after invoked by the State, *N.J.S.A.* 2A:159A-4(e), or by the prisoner, *N.J.S.A.* 2A:159A-3(d). We find nothing in the text of the IAD which requires a dismissal where there is no specific violation of the statute but only an abandonment or discontinuance of a demanding state's initial request for custody by lodging a detainer which is promptly dismissed. We conclude that the text of the IAD, not a philosophical construction, controls the grounds for dismissing an indictment for alleged noncompliance. We find no textual IAD violation here and no violation of its remedial spirit.

■ A petitioning defendant has the burden of proving the right to post-conviction relief. *State v. Preciose*, 129 *N.J.* 451, 459, 609 *A.*2d 1280 (1992); *State v. Mitchell*, 126 *N.J.* 565, 579, 601 *A.*2d 198 (1992); *State v. Laurick*, 120 *N.J.* 1, 11, 575 *A.*2d 1340, *cert.*

*denied,* 498 *U.S.* 967, 111 *S.Ct.* 429, 112 L.Ed.2d 413 (1990). Because we have considerable doubt about defendant's right to relief by dismissal of the indictment, we reverse. He has not carried his burden of proof, factually or legally.

### III

We also reject the second ground given by the Law Division judge for dismissal of the indictment. Defendant alleged that Attorney Bullock's waiver of his appearance at the speedy trial motion on February 13, 1987, a critical stage of the proceeding, denied him effective assistance of counsel. We disagree. We concede for purpose of this PCR claim that the speedy trial motion hearing was a critical stage of the proceeding. However, from our review of this record, defendant's presence would have contributed nothing to the single, substantively cognizable claim which defendant has asserted on this PCR petition, deprivation of his rights under the IAD. *See R.* 3:22–4, –5. Since defendant was not, as a matter of law, entitled to a dismissal of the indictment on IAD grounds, his absence at the motion on February 13, 1987 because of Attorney Bullock's express waiver was not prejudicial in fact. There is nothing which defendant could have added to the stipulated facts and legal argument relevant to his IAD claims. Though counsel's waiver of defendant's appearance technically might satisfy the deficient performance prong's requirement, *see State v. Fritz,* 105 *N.J.* 42, 52–53, 519 *A.*2d 336 (1987), there is no suggestion in this record that defendant was in any way prejudiced by this alleged deficiency, especially since we have fully examined his IAD claim on the merits in our review of this PCR proceeding. We also note that defendant was present at the PCR hearing in the Law Division and was there represented by very competent counsel.

Reversed; the conviction and sentence are reinstated.