86 N.J. Super. 386 (1965)
207 A.2d 165
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEORGE R. JACQUES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 25, 1965.
Decided January 28, 1965.
Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
*387 Mr. Ernest Gross, assigned counsel, attorney for appellant.
Mr. Edward J. Dolan, County Prosecutor, attorney for respondent (Mr. William D. Danberry, Assistant County Prosecutor, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The Middlesex County grand jury returned a two-count indictment charging defendant with breaking and entering with intent to steal and with larceny of more than $200. N.J.S. 2A:94-1 and 2A:119-2. He was tried to a jury, found guilty and sentenced on each count to a State Prison term of 3-6 years, The sentences to run concurrently. The trial court denied defendant's application for a new trial. We granted leave to appeal as an indigent, assigned counsel, and made available the trial transcript. Defendant has been granted bail since the filing of the appeal.
Defendant urges several grounds for reversal, but we need deal with only one.
Defendant was tried with one Ungar, who testified in his own defense. Defendant did not take the stand, stating out of the presence of the jury that he preferred not to testify. In his summation the prosecuting attorney told the jury that the reason defendant did not take the stand to deny the story of one of the State's principal witnesses was because "he couldn't deny every shred of evidence against him in this case." He went on to say, "If you were innocent, wouldn't you have taken the stand to deny it? Is that too much to ask of an innocent man?"
In his charge the trial judge said that it was the constitutional right of a defendant in a criminal trial not to be compelled to testify  the decision was entirely his. He then instructed the jury that it could draw inferences from his failure to testify and to explain or deny facts within his knowledge. However, he cautioned the jury that such failure did not create a presumption of guilt or relieve the prosecution of its burden of establishing guilt beyond a reasonable doubt.
*388 The State confesses error as to this feature of the case.
Defendant was tried in February 1963, sentenced on April 1 and resentenced on April 26, 1963. Having timely filed a notice of appeal on June 20, 1963, he then moved for leave to proceed in forma pauperis, assignment of counsel and a free trial transcript. We granted the applications and on October 30, 1963 assigned Alfred J. Hill, Esquire, to represent defendant. We relieved Mr. Hill of his assignment soon after, for good cause shown, and assigned Edward J. Mahler, Esquire, in his stead.
Late in February 1964 it came to the attention of this court that defendant had filed a motion for a new trial on October 21, 1963 and that Irving G. Verosloff, Esquire, had been assigned to represent him. We called the attention of the trial judge and Mr. Mahler to the applicability of R.R. 1:4-1 and 2:4-1, noting that supervision and control of proceedings on appeal are in the appellate court from the time the appeal is taken, except as otherwise provided by the rules. We also noted R.R. 3:7-11, which provides:
"* * * A motion for a new trial based on the ground of newly discovered evidence may be made at any time, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 10 days after verdict of finding of guilty, or within such further time as the court may fix during the 10-day period." (Italics ours)
Acting on this information, Mr. Mahler moved to dismiss the appeal without prejudice and to remand the case to the County Court for a hearing on the motion for a new trial. We entered an accordant order on March 23, 1964.
The county judge proceeded to hear the motion for a new trial and denied it on May 27, 1964. Defendant, now acting pro se because Mr. Mahler had discharged his assignment, immediately filed a motion "to resume prosecution of dismissed appeal." In effect, he sought reinstatement of his original appeal and the reassignment of Mr. Mahler as his counsel. We denied the motion on June 5, 1964 and had the deputy clerk write defendant that when this court dismissed *389 his original appeal without prejudice on March 23, 1964, the thought was that if his motion for a new trial were granted, there would be no need for the appeal he had attempted to effect. On the other hand, if a new trial were denied, he could then appeal from the original conviction and the denial of the new trial.
In consequence, defendant on June 17, 1964 applied for leave to appeal as an indigent from the judgment of conviction as well as the denial of his motion for a new trial. We granted leave to appeal and appointed his present assigned counsel to represent him.
Our recital of the sequence of events following defendant's conviction is for the purpose of showing that we deal here with a direct appeal.
On June 15, 1964, only two days before defendant's application for leave to appeal as an indigent, the United States Supreme Court decided Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), overruling Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908), and Adamson v. California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223 (1947). The trial court in Twining had instructed the jury that it might draw an unfavorable inference against defendants for their failure to testify. This was held not such a denial of due process as would invalidate the conviction. In Adamson the Supreme Court reaffirmed its position in Twining.
The Malloy court held that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgement by the states. The privilege against self-incrimination is a basic right. Under Malloy it is clear that an instruction as to the jury's right to draw an inference from defendant's failure to take the stand may no longer be given. The holding in State v. Corby, 28 N.J. 106, 117 (1958), has been negated by Malloy.
The question here is whether Malloy should be applied to a conviction obtained at about the time of the coming down of *390 that decision, where the conviction is on direct appeal. A similar problem was presented after the Supreme Court's decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), rehearing denied 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72 (1961), where the court held that the Federal Constitution barred the use by a state of evidence seized as a result of an illegal search and seizure. In State v. Smith, 37 N.J. 481, 483 et seq. (1962), certiorari denied 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1962), our Supreme Court held that Mapp would be applied retroactively to cases then pending or on appeal. But see State v. Smith, 43 N.J. 67, 78-79 (1964), holding that Mapp would not be given retroactive effect in a collateral attack upon a prior judgment of conviction no longer subject to direct appeal.
Since this is a direct appeal, we hold that Malloy v. Hogan, above, must, in the circumstances of the present case, be given retroactive effect, and this by analogy to our treatment of the search and seizure problem under Mapp. Our reading of the entire record convinces us that essential justice so requires. A like result was reached in State v. Murphy, 85 N.J. Super. 391 (App. Div. 1964).
In light of the above, we see no need to deal at length with the other points raised by assigned counsel on behalf of defendant, such as the contention that derogatory remarks by retained defense counsel regarding his client, coupled with statements favoring the probity and character of the police witnesses, created prejudice which resulted in the denial of a fair trial. The charge of inadequate representation by defense counsel will, of course, have no effect upon the new trial which we are ordering.
We are confident that the applicability of Ungar's confession to defendant will be dealt with properly by the trial judge in the course of the new trial and in his instructions to the jury.
Our reading of the record leads to the conclusion that the sledgehammer was properly admitted into evidence.
*391 The judgment of conviction is reversed and the case remanded for a new trial. In doing so, we particularly wish to commend assigned counsel for his diligent research and presentation of the case on defendant's behalf.