89 N.J. Super. 423 (1965)
215 A.2d 362
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES BROCKINGTON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1965.
Decided December 2, 1965.
*425 Before Judges KILKENNY, GOLDMANN and LEONARD.
Mr. William L. Vieser, assigned counsel, argued the cause for appellant.
Mr. Barry H. Evenchick, Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, Prosecutor, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This is an indigent defendant's appeal, pursuant to leave granted, from a judgment of conviction *426 based on a jury verdict finding defendant guilty of larceny (N.J.S. 2A:119-2) of a 1961 Cadillac. We assigned counsel and granted a free transcript.
Defendant was apprehended in the City of Newark on March 30, 1962 on a charge of larceny and receiving the automobile. He was arraigned in the Newark Municipal Court on April 3, 1962 and released on $2,500 bail to await the action of the grand jury. Ten days later, on April 13, he was arrested on a narcotics possession charge by the federal authorities in Newark. He could not meet bail and was therefore remanded to custody under the federal charge. On April 16 the bail on the state charge was revoked and a detainer filed with the federal authorities by the County of Essex. Defendant was convicted on the narcotics charge in the United States District Court of New Jersey on August 16, 1962, and sentenced to a four-year term at Lewisburg Penitentiary, Pennsylvania. Thereafter, the Essex County grand jury on November 21, 1962 returned an indictment charging defendant with larceny and receiving of the Cadillac.
On January 16, 1963 defendant wrote the Essex County Prosecutor from Lewisburg, stating that his attorney had informed him that he had been indicted on four charges of false pretense and two charges of larceny; that he was serving a term for possession of narcotics, and that he hoped to be transferred to the Federal Narcotic Hospital in Lexington, Kentucky, upon being released in mid-1965 so that he could receive proper help with his narcotics problem. The letter continued:
"I am requesting at this time to have the charges that are brought against me to be dismissed and the detainer withdrawn, so that I may have a clean start when I am returned back to society. If not, I request to be brought before the Court as soon as possible for trial on these charges.
It is my sincerest wish that these charges be disposed of as soon as possible. Would appreciate a reply at your earliest convenience. I wish to take this time to thank you for any and all consideration you may give this matter."
*427 (Although defendant alleges that he renewed this request in March 1963, neither the prosecutor, County Court, assigned counsel, nor this court has found any evidence of such letter being sent.) Defendant received no reply to his January letter.
An April 24, 1963 defendant filed an application of his own composition with the Essex County Court stating that he was aware of a detainer placed against him by the Essex County authorities charging him with four counts of obtaining money under false pretense and two charges of larceny. After referring to the fact that he had previously written the prosecutor requesting that he be tried on these charges or have them withdrawn, defendant prayed that he be brought to trial or that the detainer be withdrawn. The assignment judge acknowledged receipt of this petition by letter of April 30, 1963, informing defendant that the matter was being investigated. He again wrote defendant on May 24 advising that pursuant to R.R. 3:11-3(b) he was fixing the date of trial for the week of October 7, 1963. A third letter from the assignment judge, dated June 3, 1963, advised defendant to fill out an enclosed form and return it to the court so that counsel might be assigned. The county judge assigned counsel on June 27. Thereafter, at the request of the Essex County authorities, defendant was brought from Lewisburg to Essex County where, on September 23, he entered a plea of not guilty.
Court-assigned counsel then moved to dismiss the indictment in question, plus five other pending indictments, on the grounds that (a) the State had failed to comply with the provisions of the Interstate Agreement on Detainers (N.J.S. 2A:159A-1 et seq.) and (b) defendant had been denied the right to a speedy trial, in violation of the N.J. Constitution (1947), Art. I, par. 10. The motion was heard on October 18 and denied. Trial was set for October 28 and proceeded on that day after assigned trial counsel had, at defendant's request, called the court's attention to the motion that had been made to dismiss the indictments and denied on October *428 18. Defendant did not take the stand to testify in his own behalf, and in charging the jury the trial judge commented on that fact. He said:
"* * * I charge you that under our law a defendant cannot be compelled to testify. * * * And his failure to be a witness in his own behalf raises no presumption of guilt. However, if facts are testified to about the acts or conduct of the accused which, if true, must be within his personal knowledge and which tend to prove the guilt of the defendant, and which facts he could by his oath deny, his failure to testify in his own behalf is a circumstance from which you, the jury, may infer that he could not have truthfully denied those facts. * * *"
Defendant's notice of appeal alleged that he had been "denied a fair and impartial trial," in violation of his constitutional rights. In view of the fact that this notice was composed by defendant personally, without the assistance of counsel, we disregard the fact that counsel presently assigned to prosecute the appeal has advanced other grounds for reversal.
One of these grounds clearly calls for reversal. It is addressed to the trial judge's charge on defendant's failure to take the stand. The State confesses error. Since this is a direct appeal, Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (April 23, 1965), decided after the entry of the judgment of conviction, must be given retroactive effect. State v. Lanzo, 44 N.J. 560 (1965); and see State v. Jacques, 86 N.J. Super. 386 (App. Div. 1965).
Defendant's main contention, in his brief as well as at oral argument, is that the County Court erred in denying his motion to dismiss the indictment because the State had violated the provisions of the Interstate Agreement on Detainers and he had been denied his right to a speedy trial. The Interstate Agreement, N.J.S. 2A:159A-1 et seq., was adopted by New Jersey in 1958. L. 1958, c. 12. Its purpose, set out in Article I, N.J.S. 2A:159A-1, is to encourage the expeditious and orderly disposition of indictments, informations or complaints pending against defendants already incarcerated *429 in other jurisdictions. The statute may be activated either by the prisoner under Article III (N.J.S. 2A:159A-3) or by the State under Article IV (N.J.S. 2A:159A-4). Defendant asserts the applicability of Article III and maintains that its provisions were violated by reason of the State's failure to bring him to trial within 180 days (the time limit fixed in that Article) of his January 16, 1963 letter to the Essex County Prosecutor.
Article III provides, in part, that
"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint * * *. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the State parole agency relating to the prisoner."
A defendant's written notice and request for final disposition of an indictment outstanding against him must, under subsection (b), be given or sent to the warden or other official having him in custody and he, in turn, is required to forward it promptly, together with the certificate mentioned in subsection (a), to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.
"State," as defined in N.J.S. 2A:159A-2(a), includes the United States of America. However, the Interstate Agreement becomes of full force and effect only when "a party State * * * has enacted the same into law." N.J.S. 2A:159A-8. The Federal Government has never, legislatively or otherwise, expressed its adherence to the Interstate Agreement. However, since defendant addressed his January 1963 *430 letter to the Essex County Prosecutor, and the Lewisburg authorities have at all times been willing to cooperate with the law enforcement authorities and courts of this State, we deal directly with defendant's main contention.
Defendant never complied with the notice and certificate requirements of Article III(a). This is not denied. He considers his January 1963 letter as a substantial compliance with the statute, and relies on the New York County Court decision in People v. Esposito, 201 N.Y.S.2d 83 (1960). But that case is completely distinguishable. Defendant there had been unable to comply with the notice and certificate requirements of the statute, not because of any fault of his own, but rather because of the failure or refusal of the warden in whose custody he was to take any action in compliance with or furtherance of the prisoner's request. Defendant would interpret Esposito as holding that the statutory requirements come into play only where the request for the return of the prisoner is made by the prosecuting authorities, and not where it is made by the prisoner himself. Even were we to assume that defendant here was without fault in making his request  an assumption flatly refuted by the facts  our adherence to his suggested interpretation of the statute would reduce the notice and certificate requirements of Article III to a nullity and would attribute to our Legislature and to the signatory states a meaningless act in articulating the statutory requirements.
Defendant's January 1963 letter was addressed to the prosecutor alone. The quoted statute calls for written notice to "the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction." And defendant admittedly did not submit any request to the warden of the Lewisburg Penitentiary, and so his request to the prosecutor to be tried on the outstanding indictments was not accompanied by the warden's certificate containing the information called for in the final sentence of Article III(a).
As for defendant's claim that he was denied a speedy trial, the short answer is that he never formally moved for a *431 date certain. The rule in this State is that the right to a speedy trial is the right to move for such a trial, and to have the indictment dismissed if the State fails to prosecute it at the time for trial fixed by the court. State v. Coolack, 43 N.J. 14, 16 (1964), and cases cited. And see R.R. 3:11-3 (b). The fact that defendant was confined in a federal penitentiary would not alter the rule.
Once defendant properly sought the assistance of the State, he was afforded every consideration and given every opportunity to have the charges against him finally decided. When he filed his personally prepared petition with the Essex County Court on April 24, and it was called to the attention of the assignment judge, there was at once put in train a course of action which led to the October trial: the assignment judge's letters of April 30, May 24 and June 3, 1963, referred to above; the assignment of trial counsel on June 27; defendant's being brought from Lewisburg to Essex County to plead on September 23; the motion to dismiss on October 18 and, finally, the trial itself on the date scheduled. In short, there was no denial here of the right to a speedy trial.
At the request of defendant, assigned counsel advances an argument which defendant had projected in an informal brief accompanying his application for leave to appeal as an indigent and to have appellate counsel assigned  namely, that the County Court was without jurisdiction to try him. Defendant's own theory is that New Jersey acquired jurisdiction the moment he was arrested on the larceny and receiving charge, and had the right to retain that jurisdiction until final disposition of the charge. By surrendering custody to the federal authorities and permitting them to proceed on the narcotics charge, New Jersey (so defendant maintains) lost jurisdiction and was barred from later bringing him back from Lewisburg to stand trial.
There was never any conflict of jurisdiction here. New Jersey, prior to defendant's indictment in the federal court, had done nothing more than detain defendant and bind him *432 over to await action by the grand jury. Defendant was tried and convicted on the federal narcotics charge before he was ever indicted in Essex County. The indictment marked the earliest date at which New Jersey might have exercised its so-called "jurisdiction." After defendant had been indicted in this State, the federal authorities cooperated fully in availing New Jersey of defendant's presence for the purpose of trial. The procedure followed here is entirely consistent with the law. See Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922), where the court said:
"* * * One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it." (258 U.S., at page 260, 42 S.Ct., at page 310)
Accordingly, we find no merit in defendant's contention that the trial court was without jurisdiction.
Defendant's final argument is that the circumstances of the present case bring it within the holding of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and that decision should be applied retroactively and a reversal ordered. Assigned counsel prepared his brief before the coming down of recent decisions which establish that the Escobedo doctrine has no such application here. He concedes that the matter is controlled by such cases as State v. Coleman, 46 N.J. 16 (1965); State v. Ordog, 45 N.J. 347, 361-362 (1965), and State v. Blanchard, 44 N.J. 195, 207 (1965).
The judgment of conviction is reversed solely because of error in the court's charge on defendant's failure to take the stand.