**STATE of Tennessee, Appellant,**

v.

**Alfred Eugene GRIZZELL, Appellee.**

Court of Criminal Appeals of Tennessee.

Feb. 23, 1979.

Certiorari Denied by Supreme Court June 4, 1979.

William M. Leech, Jr., Atty. Gen., Robert A. Grunow, Asst. Atty. Gen., Harold B. McDonough, Jr., Asst. Dist. Atty. Gen., Nashville, for appellant.

Niles S. Nimmo, Nashville, for appellee.

## OPINION

DAUGHTREY, Judge.

The State of Tennessee appeals from the judgment of the trial court dismissing two indictments against the appellee, Alfred Eugene Grizzell, an inmate in the Florida state penitentiary at Raiford, Florida, based on the State's alleged violation of the Interstate Compact on Detainers, T.C.A. § 40–3901. The State insists that the inmate failed to comply with the mandatory requirements of the Interstate Compact and that the trial judge therefore erred in dismissing the indictments against him. Because we find that dismissal was factually and legally unwarranted, we must reverse the judgment below.

The problems presented by this case stem from Grizzell's decision to bypass the procedure set up by the Interstate Compact and, instead, to deal directly with Tennessee officials concerning charges pending against him in Tennessee. Article III(a) of the Compact provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint.
> . . . The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held . . . .

Section (b) of Article III requires that the "written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested."

In this case, Grizzell admittedly did not follow the guidelines set out in Section (b). He claimed, however, that he corresponded directly with Tennessee officials, who then failed to bring him to trial within the 180 day period specified in Section (a), and that the indictments pending against him should therefore be dismissed. At the hearing on his motion to dismiss, Grizzell attempted to establish the following chronology:

— He testified that on January 23, 1976, while an inmate at Raiford, he was informed by classification officer Mike Orlando that Tennessee had lodged a detainer against him. Orlando gave him a copy of Form 1, styled "notice of untried indictment, information or complaint and of right to request disposition," which was introduced into evidence as an exhibit to Grizzell's testimony. This document detailed the charges against Grizzell that gave rise to the Tennessee detainer and informed him that he could obtain disposition of the charges within 180 days by causing written notice to be served on the prosecutor and the court in the requesting state. The form indicated that in order to make such a request, Grizzell must "notify the *Classification Supervisor* of the institution" in which he was then confined. Grizzell testified that he told Orlando (whom Grizzell described as a "classification officer" but "not the chief classification officer") that he was willing to waive extradition and come to Tennessee for the charges against me." He said he was never recontacted by Orlando concerning this oral request.[1]

— Instead of making a written request for disposition to the Raiford officials, as he had been instructed to do by Form 1 and as required by Article III(b), Grizzell testified that he took matters in his own hands. He alleged that he forwarded copies of a *pro se* motion for speedy trial to the Davidson County Court Clerk and to the Davidson County prosecutor. He testified that the motion had been notarized on March 1 and that it was mailed by the prison notary pursuant to prison regulations. According to his testimony, the motion mailed to the Clerk's Office was later returned to him in an envelope printed with the address of the Clerk's Office, but the returned document was not accompanied by a cover letter and it bore no mark indicating that it had been received by the Davidson County Clerk. Grizzell testified that he still had the envelope but said that he had forgotten to bring it with him to Tennessee. The motion allegedly mailed to and returned by the court clerk, which is further discussed below, was introduced as an exhibit to Grizzell's testimony. At the hearing, the assistant prosecutor stated that a diligent search of the Davidson County District Attorney's Office had failed to turn up any evidence that Grizzell's motion was ever received there.

— On April 2, 1976, some two months after Grizzell received the detainer notice, he was indicted by the Davidson County Grand Jury for armed robbery and kidnapping. The District Attorney's Office initiated extradition proceedings, but was informed on July 12, 1976, that Grizzell was an inmate at the Raiford penitentiary and that the State would have to proceed under the Interstate Compact on Detainers.

— On September 2, 1976, the District Attorney's Office requested temporary custody of Grizzell, and on December 6, 1976, Interstate Compact on Detainers Forms 3 and 4 were forwarded to the Davidson County District Attorney's Office by the Florida Interstate Compact on Detainers Administrator,

---

1. The trial court's order pretermits the question of whether proof of an oral request to an employee of the institution would be sufficient to trigger the running of the 180 day period. Nevertheless, other than Grizzell's self-serving statement, there is no proof to support his assertion that he made such a request, and the name Mike Orlando does not appear on a list of subpoenas requested by Grizzell. Although the question is not raised here, we think the record clearly fails to establish the existence of a written request by Grizzell to the Florida authorities, as required by Article III(b), nor is there sufficient evidence upon which to hold that there was substantial compliance with the statute by means of an oral request. This point becomes relevant to our discussion below concerning the inmate's purported decision to bypass communication with Florida authorities and instead to deal directly with Tennessee officials.

indicating that Grizzell was an inmate at Raiford and that he was available for temporary release to Tennessee officials.[2]

— According to Grizzell he was returned to Tennessee on April 3, 1977, more than one year after he was first given notice of the detainer originally lodged against him. An attorney was appointed to represent him and filed a motion on May 12, 1977, in which it was asserted that the indictments against Grizzell should be dismissed on the basis of the Tennessee Supreme Court's opinion in *Nelms v. State,* 532 S.W.2d 923 (Tenn.1977).

Following the hearing in June, the trial judge entered an order of dismissal which contains these findings and conclusions of law:

It appears from all of the records in this cause, that on or around the first of April 1977, the element was brought into the jurisdiction of this Court. This is in excess of one year after he filed his motion for a speedy trial and an early disposition in accordance with Article 3 of Section 40–3901 of the Tennessee Code Annotated. The defendant cites *Nelms vs. State,* 532 SW2d 923. This Court has read both the majority opinion and the dissenting opinion of Mr. Justice Harbison. It is this Court's interpretation that the majority opinion supports the defendant's motion to dismiss. It is the Court's further opinion that Mr. Justice Harbison's dissenting opinion recognizes a distinction between the case wherein the Tennessee officials acted promptly upon being offered custody of the prisoner, as contrasts to a delay occurring "in consummating the details of the transfer". This latter proposition is exactly what the Court finds to have occurred in this instance.

The Tennessee Supreme Court held in *Nelms* that the Interstate Compact on Detainers places no burden on the detainee to insure that he is temporarily released to the demanding state, but requires only that he cause "to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for final disposition." T.C.A. § 40–3901, Article III(a).

In that case the Shelby County prosecutor had made a request for temporary custody of Nelms to the appropriate Iowa officials, under the Interstate Compact on Detainers. Two days after Nelms made a proper written request for final disposition of his case within 180 days, and a copy of this written form was subsequently received in the Shelby County District Attorney's Office. However, the Iowa officials negligently failed to send a timely offer of release and the Tennessee authorities took no further action on the request for some seven months. Nelms was tried in April 1974, more than 180 days after his request under Article III(a) of the Interstate Compact. The State maintained that the Iowa authorities' failure to comply with the applicable Interstate Compact provisions amounted to a denial of Tennessee's request for temporary custody and thus was sufficient to toll the running of the 180 day period. The court ruled that Nelms "should not be charged with the responsibility of insuring that his captors have complied with provisions of the law when he has no control over their activities." 532 S.W.2d at 926–7. Thus the indictment in *Nelms* was dismissed with prejudice to the State for failure to comply with the 180 day limitation.

This court extended the *Nelms* rule in *Burns v. State of Tennessee,* 578 S.W.2d 650

---

**2.** These documents, introduced collectively as an exhibit at the hearing, include Form 3, styled "certificate of inmate status" (dated October 5, 1976) and Form 4, "offer to deliver temporary custody." A notation on Form 3 refers to Form 2, "inmates request for disposition under Article III," which should be attached where disposition is requested by the prisoner. Alternately, the prosecutor in the requesting state may initiate proceedings for disposition under Article IV in the absence of a request by the inmate. That is apparently what occurred in this case, and there is no proof anywhere in this record that Grizzell ever executed Form 2 requesting disposition.

(Tenn.Cr.App.1978). In that case Burns, a Pennsylvania inmate, had been notified of Tennessee's request for temporary custody and had sent a written request to the designated Pennsylvania prison official asking for final disposition of the Tennessee charge. However, the inmate's request was not forwarded by the warden to the appropriate Tennessee official, and more than 180 days passed before Burns was returned to Tennessee for trial. This court held, based on the ruling in *Nelms*, that "after a detainer has been filed the [180 day limitation of the] Interstate Compact is triggered when *a prisoner gives his captors notice of his request for final disposition of untried charges against him in compliance with Article III(b),*" and that any negligence on the part of the sending state in failing to notify officials in the receiving state is "not imputable to a prisoner and does not defeat the prisoner's rights under the Interstate Compact (emphasis added)."

Both *Nelms* and *Burns* are consistent with Interstate Compact decisions in other jurisdictions. See, e. g., *Rockmore v. State,* 21 Ariz.App. 388, 519 P.2d 877 (1974); *Pittman v. State,* 301 A.2d 509 (Del.1973); *People v. Esposito,* 37 Misc.2d 386, 238 N.Y.S.2d 460 (1960). However, the State argues that *Nelms* and *Burns* are not controlling here because Grizzell failed to comply with the mandatory provisions of the Interstate Compact when he did not send notice of his request to the Davidson County court and prosecutor by registered or certified mail, return receipt requested, and did not include a certificate of inmate status, as required by Article III(a) and (b) of the Interstate Compact. Grizzell responds that these technicalities should not be invoked to defeat his statutory right to a speedy disposition of the charges against him, relying on the liberal interpretation of the statute exemplified in *Nelms*.

▇ We are fully cognizant that the "remedial nature of [the Interstate Compact] requires that it should be construed liberally in favor of those it was intended to benefit." *Nelms v. State, supra,* 532 S.W.2d at 927. If the only problem here were a

failure *by the Florida authorities* to execute and provide Grizzell with written certification of his status as an inmate, or to utilize proper mailing procedures, we would be more likely to agree that *Nelms* and *Burns* are controlling and that Tennessee law should permit prosecution of these indictments. However, there is no credible evidence here of negligence or of dilatory behavior by either Florida or Tennessee officials. In other words, the default here is not the result of any action or inaction by state officials, but is attributable solely to the conduct of the prisoner. Thus the issue before us is whether the inmate, when he chooses to deal directly with officials in the requesting state, is bound by the same requirements as would be the officials of the sending state, once they receive notice from the prisoner as set out in Article III(b). We hold in the affirmative.

▇ There are sound practical reasons for requiring prison officials to include a certificate of inmate status and to use registered or certified mail in notifying the requesting state of a request for disposition. As one court has noted, the certificate "serves to fully inform the requesting state officials of the prisoner's status, thus allowing the State's attorney to make a rational decision regarding the disposition of the case." *People v. Daily,* 46 Ill.App.3d 195, 4 Ill.Dec. 756, 763, 360 N.E.2d 1131, 1138 (1977). Moreover, the requirement that written notice of the inmate's request for final disposition be sent by registered or certified mail is more than a mere technicality. Indeed, as more fully set out below, the wisdom of the policy served by this requirement is well documented by the record in this case.

For despite the trial court's implicit finding that the March 1 *pro se* motion constituted notice to the Davidson County officials of the inmate's desire to proceed under the Interstate Compact sufficient to trigger application of the 180 day limitation, we have grave doubts that the record actually supports this conclusion, primarily because of the nature and condition of the document by which Grizzell claims to have given no-

tice. His "motion for a speedy trial" appears on a sheet of paper separate from two other pages stapled to it, one of which is styled "oath of insolvency" and the other "certification of service." The motion has quite obviously been typed on a different typewriter from the other two sheets, and it is not itself dated or notarized, even though there is sufficient space at the bottom of the page to have permitted dating and notarization. The second sheet, labelled "oath of insolvency," is notarized and dated March 1, 1976. It makes no direct reference to a motion for a speedy trial, but says only that the "affiant herein, hereby swears that he has no money or property to pay the fee for filing these papers and that he has not divested himself of anything of value to enable him to take this oath of insolvency. . . ." The certificate of service, similarly "sworn and subscribed to this 1 day of March, 1976," reads "I hereby certify that I have this day sent true and exact copies of these papers to the Clerk of Court, and the States Attorney, at the following addresses. . . ."[3] This certification, like the pauper's oath which precedes it, makes no direct reference to a motion for a speedy trial, but refers only vaguely to "these papers."

 Grizzell admits that he himself did not mail the three paged document he produced at the hearing. However, he does not allege that it was not mailed by the notary, but says that the copy in his possession was actually returned to him by the clerk's office. As noted above, there is no extrinsic proof in the record to support Grizzell's allegations that the motion was mailed in the first place, and the prosecutor's statement that neither the other copy of the motion nor any record of its receipt could be located in his office tends to support the conclusion that the motion was not in fact executed and mailed as Grizzell testified that it was. We thus conclude that

the evidence in this record preponderates against the finding of the trial court, and under these circumstances, we are not bound by the finding of fact below. *McKeldin v. State*, 534 S.W.2d 131 (Tenn.Cr. App.1975).

It seems obvious to us that the difficulties encountered here, both of giving and receiving statutory notice and of proving notice at a later time, would have been avoided entirely had the inmate followed the requirement that notice be furnished by registered or certified mail with return receipt requested. While we have no basis beyond speculation for concluding that a fraud has been perpetrated in this case, it is also obvious that if the notice requirements of the Interstate Compact on Detainers are relaxed to the extent sought here, an inmate could forego his rights under the Interstate Compact, wait more than 180 days, and then produce a bogus motion or other written "notice" of his desire for speedy disposition, swearing that it had been mailed (and returned to him) in substantial compliance with the provisions of the Interstate Compact, and thus prevent prosecution altogether. As one court has noted, the failure of an inmate to comply with statutory procedure, after being notified of the requirements of the statute, may lead to a reasonable inference that the inmate is "ambushing" the authorities involved. *Ekis v. Darr*, 217 Kan. 817, 539 P.2d 16, 22 (1975).

It has generally been recognized that the courts will not require strict compliance with the provisions of the Interstate Compact, but only require "a good faith, diligent effort by prisoner to invoke the statute . . . ." by giving "written notice to the official having custody of him." *People v. Daily, supra,* 4 Ill.Dec. at 762, 360 N.E.2d at 1137 (1977). Tennessee law provides that once this procedure has been followed subsequent adverse consequences caused by the negligence of officials in either the sending

---

**3.** The inmate testified that he secured the names and addressed by writing the Vanderbilt University School of Law in Nashville. However, there are no names on the certification, only titles. Furthermore, the Court takes judicial notice that the titles are incorrect ("Circuit Court, Criminal Division"; "Hon. States Attorney, Criminal Division") and the only address given is "Davidson County Courthouse, Nashville, Tennessee," followed by an incorrect zip code number.

or the receiving state do not inure to the detriment of the inmate, but must be borne by the officials. *Nelms v. State, supra; Burns v. State, supra.* However, it has also been recognized that "whenever the prisoner does not rely upon the official having custody of him or simply ignores the official altogether and attempts to communicate directly with the requesting state, the burden of omission no longer rests upon the sovereign, but must be shouldered by the prisoner." *People v. Daily, supra,* 4 Ill.Dec. at 762, 360 N.E.2d at 1137. Accord *State v. Savage,* 522 S.W.2d 144 (Mo.App.1975); *Beebe v. State,* 346 A.2d 169 (Del.Sup.1975). A less stringent interpretation, it is feared, "would reduce the notice and certificate requirements of Article III to a nullity and would attribute to [the] Legislature and to the signatory states a meaningless act in articulating the statutory requirements" of the Interstate Compact. *State v. Brockington,* 89 N.J.Super. 423, 215 A.2d 362, 366 (1965). And, as noted above, "[a]nother concern of the courts in requiring strict compliance when the prisoner proceeds *pro se* involves the justifiable fear that the prisoner might be manipulating the statute 'to frustrate the effort of the prosecution to give him the benefit of that very provision.'" *People v. Daily, supra,* 4 Ill.Dec. at 762, 360 N.E.2d at 1137, quoting *State v. Masselli,* 43 N.J. 1, 202 A.2d 415, 421 (1964).

Thus, it was held in *Isaacs v. State,* 31 Md.App. 604, 358 A.2d 273 (1976) that when he is proceeding *pro se,* the prisoner's failure to send a certificate of inmate status along with his request for disposition is fatal to that request. So also, relief has been denied where the prisoner failed to notify both the prosecuting officer and the appropriate court. See *Beebe v. State, supra* (prisoner's letter to "Clerk of the Circuit Courthouse" held not to satisfy statutory requirements); *Ekis v. Darr, supra* (notice sent to wrong court); *State v. Savage, supra* (notice sent to wrong prosecuting official); *People v. Daily, supra* (failure to send notice to prosecutor); *Baker v. Schubin,* 72 Misc.2d 413, 339 N.Y.S.2d 360 (1972) (failure to sent notice to prosecutor). Moreover, in reported cases such as *Daily, Sav-*

age, *Beebe, Brockington, Isaacs, Ekis v. Darr et al.,* there was substantial proof of the prisoner's attempt to serve written notice on officials of the requesting state, whatever legal deficiencies might have existed in connection with the written request. Here, however, we have a record which, factually speaking, fails to establish that written notice was ever given by the inmate or received by the proper officials.

■ While we are not prepared to bar an inmate from making a request for disposition under Article III on his own behalf, we do hold that in the event of a knowing bypass of the statutory procedure, the burden is on the prisoner to demonstrate strict compliance with the notification and certificate requirements of Sections (a) and (b) of Article III. To paraphrase the *Beebe* court:

It is one thing for an official having custody to refuse to process a request and thus leave the prisoner to communicate as best he can with the State which has lodged a detainer for him. That was [*Nelms*]. It is quite a different matter, however, when a prisoner simply ignores the official having custody of him and attempt to communicate with the requesting state. That is this case and the difference from [*Nelms*] is significant and determinative.

*Beebe v. State, supra,* 346 A.2d at 171.

■ Because we find that the record fails to establish the existence of written notice as required by T.C.A. § 40–3901, Article III(a) and (b), either to the officials of the sending state *Florida* or to the proper authorities in the requesting state (Tennessee), we hold that the prisoner is not entitled to the protection of the time limitation contained in Section (a). Moreover, even if such notice had been satisfactorily established, the record shows that the inmate proceeded outside the requirements of Article III(a), so that the legal deficiencies here are not the result of negligence by public officials, but are attributable solely to the inmate himself. Under these circumstanc-

es, the inmate's burden of demonstrating strict compliance with the requirements of the Interstate Compact has not been met, and it follows that the trial court erroneously determined that the running of the 180 day period began on March 1, 1976. In short, there is no satisfactory evidence that the statutory period was ever triggered in this case, and for this reason it cannot be said to have expired. We are thus led to the conclusion that Grizzell's motion to dismiss should have been overruled.

The judgment of the trial court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

RUSSELL, P. J., and TATUM, J., concur.