Chester L. Whitley, Jr. was charged on October 9, 1978, with the offense of burglarizing an unoccupied dwelling, and, on September 14, 1979, the Russell County Grand Jury indicted Whitley for the crime of burglary in the second degree.
On October 1, 1979, the appellant appeared in the Russell County Circuit Court and applied for treatment as a youthful offender. This application was denied on October 12, 1979. On that date, he was arraigned and entered a plea of not guilty. Also, he filed a motion to quash the indictment on the grounds that the State of Alabama had denied him his right to a speedy and public trial. A hearing was held on the motion on October 19, 1979, and the motion was overruled on November 6, 1979. *Page 1222 
The trial was held on November 14, 1979, and the appellant was found guilty. On November 30, 1979, he was sentenced to six years imprisonment.
The indictment in this case, omitting the formal parts, charges:
 "Chester L. Whitley, Jr., did, in the daytime, with the intent to steal, break into and enter the dwelling house of Virginia Akin, which was unoccupied at the time, . . ."
In support of this indictment, the State presented the following evidence.
Virginia Akins had lived at 903 26th Street, Phenix City, Alabama, for approximately twenty-two years. On September 14, 1978, she left home to go to work about 8:50 A.M. Prior to leaving, she checked the doors, windows and screens and found that they were all locked. Returning from work at approximately 11:40 A.M., she found the kitchen window open and the screen lying on the ground below the window. She also noticed that two rifles, a pellet gun, a Columbia eight-track tape player with speakers, a G.E. portable T.V., and a box fan were missing. The witness estimated that the total value of these items was about seven hundred dollars.
Archie Akins, Virginia Akins' husband, gave substantially the same testimony as that of his wife. However, Mr. Akins' testimony included identification of the shotgun and weapons taken during the burglary.
After Detective Clifton Smith had taken the original report, Detective Aubry Harbert of the Phenix City Police Department, conducted a "follow-up" investigation and found that a rifle and a shotgun had been pawned in Columbus, Georgia. One of the weapons was pawned at Herb's Pawn Shop and the other at the Village Pawn Shop, both in the name of the appellant, Chester Whitley. The pawn tickets bore the appellant's driver's license number.
During the trial, Harbert identified the "pawn slips" and stated that he had seen them at the Village Pawn Shop and at Herb's Pawn Shop in Columbus, Georgia. Also, he identified State's Exhibit No. 1 as the shotgun found at Herb's Pawn Shop and State's Exhibit No. 2 as the rifle found at the Village Pawn Shop. According to Harbert, these items were taken to the police station and locked in the evidence room until the day of the trial when they were brought into the courtroom.
William Feinberg, owner and operator of the Village Pawn Shop in Columbus, Georgia, identified State's Exhibit No. 4, as the original "pawn ticket" issued to Chester L. Whitley, Jr., the appellant. Feinberg testified that the "pawn ticket" was kept as a regular part of his business and that it was a permanent record in the store.
According to Feinberg, the "pawn ticket" showed that a twenty-two caliber Glenfield rifle, Model 60, bearing the serial number 70178607, had been "taken in pawn." Also, the "pawn ticket" indicated the date of birth, color of eyes, weight and height of person pawning the gun and the date of the pledge. On the reverse side of the ticket there were three fingerprints, a signature of the person making the pledge, and the driver's license number.
During the trial, Feinberg identified State's Exhibit No. 2, a rifle with a "pawn ticket" numbered 945 and bearing the name of "Whitley." Feinberg said that the amount of the loan was twenty dollars, to be paid on September 13, 1978.
Irvin Rosenberg, Jr., owner and operator of Herb's Pawn Shop in Columbus, Georgia, identified State's Exhibit No. 3 as "a pawn ticket" from his store which was prepared under his supervision. The "pawn ticket" was kept in the usual course of business as a permanent record at his place of business.
Rosenberg's testimony concerning what the "pawn ticket" contained or bore on each side was substantially the same as the testimony of Feinberg. Rosenberg testified that State's Exhibit No. 1, the shotgun, bore the same serial number as that on the pawn ticket marked "State's Exhibit No. 3."
Detective Harbert, recalled during the trial, testified that State's Exhibit No. 3, the "pawn ticket" which he identified, bore the name of the appellant, Chester L. Whitley, *Page 1223 
Jr. Also he said that the ticket bore the driver's license number of the appellant.
Detective Clifton Smith of the Phenix City Police Department testified that he made the original report of the burglary at the Akins' residence on September 14, 1978. After his arrival, he determined that the burglar's point of entry into the Akins' residence was through a kitchen window. His attempt to lift fingerprints was not successful. Also, the items described by Smith as those taken were precisely the same items described in the testimonies of Mr. and Mrs. Akins.
Ronald Menz, dispatcher with the Russell County Sheriff's Department, identified the fingerprint card bearing the prints of the appellant. Menz testified that he had placed the appellant's prints on the card and that the card bore his signature and that of the appellant.
John Estes, on September 9, 1978, was a detective sergeant with the Phenix City Police Department. Estes testified that he, too, prepared a fingerprint card bearing the prints of the appellant, his signature, and the signature of Office Estes.
Lamar Miller was employed by the Alabama Department of Forensic Sciences as an examiner of documents. After his qualifications were stipulated to by the defense, Miller stated that he had compared State's Exhibit Numbers 4, 5 and 6, and had found that the signatures on the two fingerprint cards and the pawn ticket were all written by the same person.
Tellis D. Hudson, a criminalist with the Alabama Department of Forensic Sciences, had examined in excess of 100,000 fingerprints during his seven years with the department. He testified that he had compared the fingerprints on State's Exhibit No. 3 with the fingerprints on State's Exhibit Numbers 5 and 6, had later, compared the fingerprints on the back of State Exhibit No. 4 with the prints on State's Exhibit Numbers 5 and 6, and had found that all fingerprints on the different exhibits belonged to the same person.
At the conclusion of Hudson's testimony, the State rested its case, and the appellant moved to exclude the State's evidence. The appellant argued that the State failed to make a prima facie case because it did not show a breaking or entering, nor did it show the ownership of the premises.
The motion was overruled, and the defendant rested his case without calling any witnesses or presenting any evidence.
 I
The appellant contends that the trial court committed reversible error by denying his motion to quash the indictment. He asserts that, because he was not brought to trial within the 180 days of his request for a disposition of the charges against him, the criminal complaint should have been dismissed with prejudice. Pursuant to Article III of the Alabama Code, §15-9-81 (Supp. 1979).
Article III(a) reads as follows:
 "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided, that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, and the time remaining to be served on the sentence, *Page 1224 
the amount of good time earned, the time of parole eligibility of the prisoner and any decision of the state parole agency relating to the prisoner." [Emphasis added].
The record clearly shows that the appellant's original motion for a speedy trial went to the sheriff's office, not to the "prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction." In the present case, the "prosecuting officer" was the district attorney of Russell County. The district attorney's office was not informed of the motion until May 25, 1979, and, at that time, the office began the steps necessary to return the appellant for trial.
The appellant has not made a proper request for disposition under the uniform mandatory disposition Detainer Act. The precise question of whether the appellant gave proper notice to the proper authorities has not been addressed by the courts in Alabama; however, it has been answered in other jurisdictions. The Tennessee Court of Criminal Appeals in State v. Grizzell,584 S.W.2d 678, stated:
 "[T]he requirement that written notice of the inmate's request for final disposition be sent by registered or certified mail is more than a mere technicality."
The court, in Grizzell, also said:
 "[I]t is also obvious that if the notice requirements of the Interstate Compact on Detainers are relaxed to the extent sought here, an inmate could forego his rights under the Interstate Compact, wait more than 180 days, and then produce a bogus motion or other written `notice' of his desire for speedy disposition, swearing that it had been mailed (and returned to him) in substantial compliance with the provisions of the Interstate Compact, and thus prevent prosecution altogether. As one court has noted, the failure of an inmate to comply with statutory procedure, after being notified of the requirements of the statute, may lead to a reasonable inference that the inmate is `ambushing' the authorities involved. Ekis v. Darr, 217 Kan. 817, 539 P.2d 16, 22 (1975)."
See People v. Daily, 46 Ill. App.3d 195, 4 Ill.Dec. 756,360 N.E.2d 1131; State v. Brockington, 89 N.J. Super. 423,215 A.2d 362.
In People v. Jacobs, Colo., 596 P.2d 1187, the Colorado Supreme Court said:
 "Compliance with the requirements of the Interstate Agreement on Detainers is essential. — Since the defendant did not make his April 1977 request for disposition in compliance with those requirements, his request was insufficient to trigger the state's obligation under Article III."
Also, the Court of Special Appeals of Maryland, in Isaacs v.State, 31 Md. App. 604, 358 A.2d 273, stated that the 180 day time period in which an accused out of state prisoner must be tried does not begin to run until after there has been a full compliance with the Interstate Detainer Act. In the case ofMcBride v. U.S., 393 A.2d 123, the Court of Appeals of the District of Columbia, after considering this question, held that the defendant was obliged to direct his written request to the prosecuting jurisdiction in order to trigger the 180 day speedy trial period. See Young v. Mabry (8th Cir.)596 F.2d 339.
Based on the facts presented and the legal principles found in the cases cited above, we are of the opinion that there must be strict compliance by the prisoner with the requirements of Article III, otherwise, a conniving prisoner could finagle procedures to frustrate efforts of the prosecution to give the prisoner the benefit of the Interstate Compact on Detainers. The appellant's contention that his conviction was vitiated by failure of the State to comply with the procedures of the Act is not well founded. It is our judgment that the appellant's request for disposition was insufficient to trigger the State's obligation under Article III.
 II
Appellant insists that he was denied a speedy trial in violation of his constitutional *Page 1225 
right and that the trial court committed reversible error when it did not grant his motion to quash the indictment.
No constitutional basis exists for determining what amount of delay deprives a prisoner of his constitutional right to a speedy trial. This determination must be made on a case by case basis. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182,33 L.Ed.2d 101. However, the United States Supreme Court in Barker v.Wingo, supra, did set out factors which should be considered in determining whether deprivation of this constitutional right has occurred. Those factors have been set out in many cases, but can be found in Prince v. State, Ala.Cr.App.,354 So.2d 1186; Kircheis v. State, 56 Ala. App. 526, 323 So.2d 412; Houselv. State, 3 Div. 189, Ala.Cr.App.Ms. (February 1977); Corn v.State, Ala.Cr.App., 387 So.2d 275 (1980).
Those factors are: (1) the length of delay, (2) the assertion by the defendant of his right, (3) the reason for the delay, and, (4) prejudice to the defendant.
Approximately eleven months elapsed between December 6, 1978, when the first request by Lamar Murphy, Sheriff of Russell County, was made and November 14, 1979, the date of the trial. This delay cannot be concluded to be "patently offensive" and unjustified. Prince v. State, supra. Also, this delay was not sufficient in and of itself to justify a finding that appellant had been deprived of his right to a speedy trial. There have been cases, such as Barker v. Wingo, supra, and Hopson v.State, Ala.Cr.App., 352 So.2d 500, both involving a delay of five years which, alone, was not sufficient.
Regarding the appellant's assertion of his rights, we find that the district attorney's office did not receive the appellant's request for disposition until May 15, 1979. Afterwards, that office made a diligent effort to return the appellant and did in fact return him on September 27, 1979. Under these circumstances, we find that the point when the appellant began to assert his rights was in fact the date that the district attorney's office received the appellant's letter, dated May 25, 1979. United States v. Palmer (5th Cir.),537 F.2d 1287.
As to the "reason for the delay," we find that once the appellant's letter was received by the district attorney's office, the authorities took "affirmative action" for the return of the appellant. After arraignment on October 12, 1979, the appellant was tried on November 14, 1979.
Under these circumstances, we believe that the State of Alabama was diligent in its efforts to secure the presence of the accused. Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564,26 L.Ed.2d 26. The facts outlined in this case do not demonstrate any "presumptively prejudical" delay, which is necessary to trigger an inquiry into the speedy trial question. UnitedStates v. Palmer (5th Cir.), 537 F.2d 1287.
If any delay occurred, it was occasioned because the appellant failed to comply with the requirements of Article III of the Uniform Detainer Act. Therefore, it is our judgment that the trial court's denial of appellant's motion to quash the indictment on the grounds that the appellant was denied a speedy trial was not error.
We have searched the record and have found no error prejudicial to the appellant. The judgment of conviction by the Russell Circuit Court is, therefore, affirmed.
AFFIRMED.
All the Judges concur.