Buying, receiving or concealing stolen property; sentence: ten years' imprisonment.
 I
Appellant contends that he was unconstitutionally deprived of a speedy trial. U.S. Const., amend. VI; 1901 Ala. Const., art. I, § 6. The following timetable sets forth the facts governing this issue:
February 9, 1978 — Appellant was arrested for possessing a stolen pickup truck.
February 17, 1978 — Grand jury returned an indictment against the appellant.
April 19, 1978 — Appellant's first trial was declared a mistrial.
November 29, 1978 — Appellant's second trial was declared a mistrial.
March 1979 — Appellant was tried and convicted in St. Clair County on another charge. He gave notice of appeal and was released on bond.
August 1979 — Appellant failed to perfect his appeal and a forfeiture was entered against him.
September 1979 — Appellant failed to appear at trial.
November 1979 — Trial court was advised that appellant was in the custody of a federal marshall.
February 1980-May 1981 — While appellant was incarcerated in the Federal Correctional Institution at Seagoville, Texas, prison officials informed appellant that there was a St. Clair County, Alabama, detainer outstanding against him. Appellant attests that he repeatedly wrote to St. Clair County prosecuting officials requesting to be brought back to Alabama for trial.
May 6, 1981 — Appellant demanded a pretransfer hearing prior to the temporary transfer of custody to Alabama officials. The request was denied.
May 18, 1981 — Trial court appointed appellant's attorney. *Page 867 
May 25, 1981 — Appellant filed a motion to dismiss for lack of a speedy trial.
May 27, 1981 — Appellant was tried and convicted of buying, receiving or concealing stolen property.
The United States Supreme Court in Barker v. Wingo,407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), set out four balancing factors which should be assessed in determining whether a criminal defendant has been denied a speedy trial. The Court ruled that in weighing the conduct of the State and the accused the courts are to consider: (1) the length of the delay, (2) the reason for the delay, (3) the assertion by the defendant of his right, and (4) prejudice to the defendant.Corn v. State, 387 So.2d 275 (Ala.Cr.App.), writ denied,387 So.2d 280 (Ala. 1980); Turner v. State, 378 So.2d 1173
(Ala.Cr.App.), writ denied, 378 So.2d 1182 (Ala. 1979).
The length of the delay must be "presumptively prejudicial" in order to trigger an inquiry into the remaining Barker
factors. Barker, supra; Watson v. State, 389 So.2d 961
(Ala.Cr.App. 1980). The speedy trial right is activated only when a criminal prosecution has begun and extends only to those persons who have been "accused" in the course of that prosecution. United States v. Marion, 404 U.S. 307,92 S.Ct. 455, 30 L.Ed.2d 468 (1971). A person becomes an "accused" when he is formally indicted or else actually restrained pursuant to arrest. Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303,46 L.Ed.2d 205 (1975).
Thus, it would seem that the "triggering" date in this case would be February 9, 1978, the date of appellant's arrest. Nonetheless, further analysis is mandated by the unique circumstances which occurred here. The State brought the appellant to trial on April 19, 1978, three months following his arrest and clearly within the realm of constitutional expectations. However, the trial was declared a mistrial. The State retried the appellant on November 29, 1978, seven months after the first mistrial, and once again the trial judge declared a mistrial. It is our judgment that November 29, 1978, was the date on which appellant's speedy trial right attached in this case since it was incumbent on the State from this date forward to provide appellant with another trial. Therefore, the length of the delay from November 29, 1978, until May 27, 1981, was a period of two and one-half years. We believe that this time span may be considered as long enough to be deemed "presumptively prejudicial," Foster v. State, 45 Ala. App. 323,229 So.2d 913, cert. denied, 285 Ala. 754, 229 So.2d 915
(1969), and merits our review of the other Barker factors.
No formal hearing was apparently held on the motion to dismiss for lack of a speedy trial filed by the appellant on May 25, 1981. Therefore, the record provides scanty evidence with which to assimilate and weigh the remaining Barker
factors. The reasons for the delay rest equally on both sides of the fulcrum. A bench note of the trial judge demonstrates that St. Clair County authorities were aware that appellant was in federal custody as early as November 1979. Alabama then had a constitutional duty to make a "diligent, good-faith effort" to secure the convict imprisoned outside the state for a prompt trial on pending charges. Prince v. Alabama, 507 F.2d 693 (5th Cir.), cert. denied, 423 U.S. 876, 96 S.Ct. 147, 46 L.Ed.2d 108
(1975). Until just prior to trial, we find nothing in the record to show whether the State ever attempted to locate appellant in the federal penal system and offer to return him to Alabama for trial.
Nevertheless, this court has held that negligence on the part of the State must be weighed less heavily than deliberate prosecutorial delay. Corn, supra. Moreover, appellant contributed to this delay. Following the second mistrial in November 1978, appellant was tried and convicted of another charge in St. Clair County in March 1979. He appealed the case and was released on an appeal bond. A forfeiture was entered against the appellant in August 1979 for failing to perfect the appeal. In September 1979 appellant failed to appear for trial of the instant case. Clearly, *Page 868 
one year of the delay was attributable to appellant's own actions. In addition, it appears that once the State did attempt to bring appellant back to Alabama for trial appellant refused to waive extradition demanding a pretransfer hearing before federal authorities. "Delays occasioned by the defendant or on his behalf are excluded from the length of delay and are heavily counted against the defendant in applying the balancing test of Barker." Walker v. State, 386 So.2d 762 (Ala.Cr.App.),writ denied, 386 So.2d 765 (Ala. 1980).
Appellant's motion to dismiss incorporated attached "exhibits" including copies of four letters to the prosecuting attorney of St. Clair County. As we will discuss further in another section of our opinion, these copies bear no indicia of receipt, filing or postmarks to prove that they were ever mailed. We have no way to divine whether these letters were actually mailed by appellant and received by the proper officials. We note that the clerk of the circuit court supposedly wrote appellant that "[t]he cases which you wereinquiring about are still pending." (Emphasis added.) Nonetheless, this response does not specify by what means or when the appellant made inquiries to that office — whether by telephone calls, through an attorney's investigative attempts, or in fact by the aforementioned letters.
Therefore, we have not been shown positive proof that the appellant ever asserted his speedy trial right prior to the motion to dismiss filed on May 25, 1981, only two days prior to his trial and conviction. There is no specific showing in the record that appellant was prejudiced by the delay. Only in the letters he purportedly mailed to the St. Clair County prosecutor does the appellant mention that "the detainer is causing an adverse effect upon my treatment while in federal custody." No more specific information relating to prejudice suffered by the appellant was provided in the record. Under these circumstances we find that appellant was not unconstitutionally denied a speedy trial.
 II
Appellant claims that he was not tried within 180 days after he requested a trial under art. III (a) of the Interstate Agreement on Detainers and, therefore, this case should have been dismissed. Both Alabama and the United States are parties to the agreement. Ala. Code 1975, § 15-9-81; 18 U.S.C.A.App., page 337 (Supp. 1977). However, we find that the 180-day time limitation was never properly activated by the appellant, and he may not now claim to benefit from the agreement.
Article III, §§ (a) and (b), of the Interstate Agreement on Detainers provide:
 "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint; provided, that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decision of the state parole agency relating to the prisoner.
 "(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of *Page 869 corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested." (Emphasis added.)
It is clear from (b) that a prisoner need only give or send a written request for final disposition of an outstanding detainer "to the warden, commissioner of corrections or other official having custody of him" in order to completely fulfill his sole requirement under the agreement. People v. Daily,46 Ill. App.3d 195, 4 Ill.Dec. 756, 360 N.E.2d 1131 (1977). This was the only provision with which the prisoner had to comply in order to initiate the statutory machinery. A prisoner seeking to benefit from the statutory provisions must first meet the burden of compliance with the agreement. Williams v. State ofMaryland, 445 F. Supp. 1216 (D.Md. 1978). The record here provides no proof that appellant gave such a written request to the proper federal prison official at Seagoville, Texas.
When a prisoner chooses to bypass the simple procedure provided in art. III (b), and attempts to deal directly with officials in the receiving state, he must satisfy the additional requirements of the agreement which would normally be executed by officials in the sending state. State v.Grizzell, 584 S.W.2d 678 (Tenn.Cr.App.), cert. denied, (Tenn. 1979). Copies of four letters directed to the "Prosecuting Attorney and/or Clerk of the Court" of St. Clair County were attached to appellant's motion to dismiss. However, since it appears that these letters were not sent by "registered or certified mail, return receipt requested" as provided by art. III (b), it is impossible to discern whether these "requests" under the agreement were actually received and notice thereby given to Alabama authorities. This same omission by a prisoner proved fatal in Grizzell, supra, at 682, where the Tennessee court wrote that "the requirement that written notice of the inmate's request for final disposition be sent by registered or certified mail is more than a mere technicality." Moreover, there is no indication that appellant had the certificate of inmate status drawn by the proper prison official sent to St. Clair County. This omission alone proved fatal to the prisoner in Isaacs v. State, 31 Md. App. 604, 358 A.2d 273 (1976), which held that the required certificate is "mandatory and not directory."
While the remedial nature of the agreement mandates that it should be construed liberally in favor of those it was intended to benefit, Grizzell, supra, this does not mean that "courts are free to bend the legislation out of shape or to remold it to some other form." Isaacs, supra, 358 A.2d at 278. It has generally been held that strict compliance with the agreement is not required, but rather "a good faith, diligent effort by a prisoner to invoke the statute" by giving "written notice to the official having custody of him." People v. Daily, supra, 4 Ill.Dec. at 762, 360 N.E.2d at 1137 (1977). However, once an inmate bypasses the statutory procedure, the burden is on the prisoner to demonstrate strict compliance with the notification and certificate requirements of Sections (a) and (b) of art. III. Whitley v. State, 392 So.2d 1220 (Ala.Cr.App. 1980), writdenied, 392 So.2d 1225 (Ala. 1981). The 180-day time limitation of the agreement is triggered only when a prisoner has fully complied with the agreement. Isaacs, supra; Daily, supra; andGrizzell, supra. Since appellant failed to properly notify Alabama officials and have the certificate of inmate status sent to them, he did not comply with the agreement and the 180-day period was never activated. Therefore, this claim is without merit.
 III
Appellant also complains that he was erroneously denied a pretransfer hearing pursuant to art. IV (d) of the Interstate Agreement on Detainers. In Cuyler v. Adams, 449 U.S. 433,101 S.Ct. 703, 66 L.Ed.2d 641 (1981), the United States Supreme Court recently held that a prisoner involuntarily transferred under art. IV should be entitled to "whatever `safeguards of the extradition process' he might otherwise *Page 870 
have enjoyed." The Court explained that "[t]hose safeguards include the procedural protections of the Extradition Act (in those States that have adopted it), as well as any other procedural protections the sending State guarantees persons being extradited from within its borders." Here, appellant was incarcerated at a federal correctional institution when Alabama requested custody under art. IV (a); thus, the "sending state" was the federal government. Since the United States has not adopted the Uniform Criminal Extradition Act and does not statutorily provide a federal prisoner with any procedural protections when being transferred to state custody, 18 U.S.C. § 4085, we find that appellant was not entitled to a pretransfer hearing in the instant case.
No question of extradition is involved where a prisoner in the custody of the federal government is turned over to a state for prosecution. Thomas v. Levi, 422 F. Supp. 1027 (E.D.Pa. 1976). "This historical objective of extradition — to prevent the territorial boundaries of a state's sovereignty from frustrating its efforts to bring to justice those who violate its laws — obviously has no application to the dual or `vertical' territorial sovereignty which characterizes the federal-state relationship." Thomas v. Levi, supra, at 1033. Prior to the United States' adoption of the Interstate Agreement on Detainers, the federal government could waive its immunity from state process and consent to have prisoners in its custody turned over to a state, Ponzi v. Fessenden,258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922), but only now is the United States compelled to do so. Since appellant enjoyed no preexisting procedural protections under federal law to challenge his transfer to Alabama, either statutory or constitutional, he had no right to a pretransfer hearing.
AFFIRMED.
All the Judges concur.